**Andrew GUSTAFSON, et al.,
Plaintiffs-Appellants,**

v.

**AMERICAN TRAIN DISPATCHERS' ASSOCIATION, AFL–CIO, a national labor organization, and Max H. Kassera, Defendants-Appellees.**

**No. 85–1465.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1985.

Decided April 22, 1986.

Rehearing and Rehearing En Banc
Denied May 23, 1986.

John M. Bowlus, Chicago, Ill., for plaintiffs-appellants.

Thomas A. Woodley, Muholland & Hickey, Washington, D.C. for defendants-appellees.

Before CUMMINGS, Chief Judge, WOOD and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

The plaintiffs, Andrew Gustafson, Michael Galligan, John Koffman and Elson Gleason, brought an action against the defendant, American Train Dispatchers' Association, AFL–CIO ("ATDA"), alleging that ATDA had violated section 101(a)(5) of the Labor-Management Reporting and Disclosure Act (the "LMRDA"), 29 U.S.C. § 411(a)(5), by denying plaintiffs a full and fair hearing before assessing fines against them. The district court granted summary judgment for the defendants. We affirm.

## I.

The plaintiffs were dispatchers for the Burlington Northern Railroad ("BN"), working at its Cicero, Illinois office. They were aware that the performance of their duties was necessary for the safe operation of the BN system. They were also familiar with the Consolidated Code of Operation Rules issued by the BN, which regulated their duties as dispatchers.

On April 4, 1982, the ATDA called a strike against the BN.[1] At 9:18 p.m. Max Kassera, a vice president of the ATDA and a defendant in this action, called the plaintiffs at the Cicero office and instructed them to leave their jobs. A BN official warned the plaintiffs that to walk out would violate the BN Code. They refused to leave. Kassera called again at 9:58 p.m. and again ordered the plaintiffs to leave. At 1:20 a.m. two different union officials, Dave Sprau, General Chairman of the ATDA, and T.E. Eshelman, called and requested that these dispatchers leave. They explained that they were afraid to do so, allegedly for fear of endangering the BN system. The union officials told them that they could remain, because only one hour and forty minutes of their shift remained. This conversation was discussed in two letters from Eshelman to D.E. Collins, president of ATDA, dated April 6 and April 16, 1982.

On April 19, 1982, Sprau began an informal investigation of plaintiffs' refusal to leave their posts by sending letters to the plaintiffs requesting them to account for their actions. In June 1982 Kassera brought charges against the plaintiffs and requested a formal investigation, pursuant to the Constitution and By-Laws of the ATDA, concerning plaintiffs' disregard of two union officials' instructions to leave their posts. Sprau conducted the investigation and in August sent letters to the plain-tiffs informing them of his investigation and findings. In September Collins decided, after reviewing the investigation, that a trial should be held. He sent a letter to each of the plaintiffs to notify them of the trial. The trial was held before a union tribunal on November 1, 1982. Each of the plaintiffs admitted that he had twice disobeyed Kassera's instructions to leave his post and that he knew Kassera was a union official upon whose representations he could rely. All of the plaintiffs were found guilty of having disobeyed a union order. This ultimate finding was reached because the tribunal found that the plaintiffs should have obeyed Kassera's instructions, they failed to prove that the strike was illegal and all the other dispatchers but plaintiffs and two others had complied with the strike orders. Each plaintiff was reprimanded and fined $800, based on the cost of the union proceedings. The plaintiffs exhausted all their internal appeals.

## II.

Section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5), provides:

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

Section 102 of the LMRDA, 29 U.S.C. § 412, grants union members a civil cause of action for denial of any of these rights. Plaintiffs argue that they were denied a full and fair hearing because certain exculpatory letters were not turned over to them and because the strike was illegal and violated the BN's Operation Rules.[2]

---

1. "The system-wide strike was precipitated by BN's unilateral action at its Springfield, Missouri office to rearrange dispatcher facilities. The work stoppage lasted only one day. On April 5, a TRO was issued by Judge Thomas R. McMillen of the Northern District of Illinois, Eastern Division, Case No. 82 C 2116. The issues under-lying the strike were settled between the parties and the district court dismissed BN's complaint and ATDA's counterclaim." District Court Memorandum Opinion, at 2.

2. Before the district court the plaintiffs also argued "that they were disciplined for the false reason that all other union members honored

■ Judicial review of union disciplinary proceedings is limited. *See Lewis v. American Federation of State, County & Municipal Employees, AFL–CIO*, 407 F.2d 1185 (3d Cir.1969). There is a "general national policy against judicial interference in the internal affairs of unions." *Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir. 1975). Section 101(a)(5)(C) does not require the "full panoply of procedural safeguards found in criminal proceedings." *Frye v. United Steelworkers of America*, 767 F.2d 1216, 1223 (7th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 530, 88 L.Ed.2d 461 (1985) (quoting *Tincher,* 520 F.2d at 854). Under section 101(a)(5)(C) the evidence is sufficient if the charging party provides "some evidence at the disciplinary hearing to support the charges made." *International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers v. Hardeman*, 401 U.S. 233, 246, 91 S.Ct. 609, 617, 28 L.Ed.2d 10 (1971); *see Frye,* 767 F.2d at 1223; *Curtis v. International Alliance of the Theatrical Stage Employees & Moving Picture Machine Operators of the United States & Canada, Local No. 125*, 687 F.2d 1024, 1031 (7th Cir.1982). Further, the courts cannot determine the scope of offenses warranting discipline. *See Hardeman,* 401 U.S. at 242–45, 91 S.Ct. at 615-17; *Curtis,* 687 F.2d at 1029.

■ Before the trial board the plaintiffs requested that the charges against them be dropped because the copy of the investigative report sent to them pursuant to the union's constitution did not contain copies of the April 6 and April 16 letters from Eshelman discussing his conversation with the plaintiffs. The board denied the request because it determined that the constitution did not require that copies of the underlying correspondence be furnished. The district court held that the failure to

give the plaintiffs the letters did not deny their rights to a full and fair hearing because the plaintiffs failed to request the letters and because the letters did not "constitute material evidence whose nondisclosure violated the fundamentals of due process." District Court Memorandum Opinion, at 10. We agree with the district court's analysis.

First, the plaintiffs never specifically requested the letters. They asked only that the trial board dismiss the charges because the letters had not been turned over before trial. Further, the plaintiffs did not testify about the telephone conversation to which the letters refer.[3] Thus, the plaintiffs failed to put this conversation in issue and thereby waived any right to production of the letters. *See Ritz v. O'Donnell,* 566 F.2d 731 (D.C.Cir.1977).

■ Second, even absent a waiver, failure to produce the letters could not deny the plaintiffs a full and fair hearing because the letters were not really material to the guilt or innocence of the plaintiffs of the charges against them. *See Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir.1975) (due process requires more in criminal cases than at a union disciplinary hearing); *cf. United States v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 2400–01, 49 L.Ed.2d 342 (1976) (failure to disclose evidence violates due process requirement only if the evidence is material to the question of guilt or innocence). The plaintiffs were charged with disobeying Kassera's orders to leave their posts. These orders were given at 9:18 and 9:58 p.m. The telephone conversation discussed in the letters did not occur until 1:20 a.m. Plaintiffs were then told they could finish their shift because only a short time remained until its completion. The district court correctly concluded that

---

the strike, and that the people involved in the tribunal knew this charge was false." Plaintiffs do not appeal the district court's rejection of this claim.

**3.** Plaintiffs argue that there is no evidence that they participated in this conversation and thus could testify about it. Even if the plaintiffs did not participate in the conversation, they could

have testified about it to the extent that its contents had been conveyed to them. We doubt that a hearsay objection would have excluded such testimony because no formal rules of evidence were followed and even if such rules were enforced, the testimony would probably been allowed to show the plaintiffs' state of mind.

"[at] 9:18 and 9:58, the times with which the charges are concerned, the phone call had not occurred and the rationale in the letters for allowing the plaintiffs to remain on duty had not yet arisen." District Court Memorandum Opinion, at 10.

■ Plaintiffs also allege that the strike was illegal and that obedience to the union's orders would have violated the BN's Operation Rules, endangered the public and resulted in possible criminal liability. The trial board considered the allegation that the strike was illegal, but decided that the strike was authorized.

We do not think that the issues of the legality of the strike or the safe operation question are strictly before us because these questions do not bear on the alleged denial of procedural due process under LMRDA. The Supreme Court has held that section 101(a)(5) "gives courts no warrant to scrutinize the union regulations in order to determine whether particular conduct may be punished at all." *International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers v. Hardeman,* 401 U.S. 233, 245, 91 S.Ct. 609, 617, 28 L.Ed.2d 10 (1971). Plaintiffs do not argue that any provision in the LMRDA prohibits the union from punishing conduct such as that with which they are charged. Therefore this court cannot under the LMRDA review ATDA's regulations or the substantive application of those regulations.

We affirm the district court's grant of summary judgment.