Donald Joseph CLIFT, et al.,
Plaintiffs–Appellants,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), et al., Defendants–Appellees.

No. 85–1802.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 18, 1987.

Decided Aug. 3, 1989.

George Franklin Hinkle, Indianapolis, Ind., for plaintiffs-appellants.

W.C. Blanton, Ice, Miller, Donadio & Ryan, Michael A. Blickman, Indianapolis, Ind., Leonard R. Page, Associate Gen. Counsel UAW Legal Dept., Detroit, Mich., Nora L. Macey, Segal & Macey, Indianapolis, Ind., for defendants-appellees.

Before BAUER, Chief Judge, CUMMINGS and MANION, Circuit Judges.

BAUER, Chief Judge.

This case is before us on remand from the Supreme Court —— U.S. ——, 109 S.Ct. 830, 102 L.Ed.2d 963, in light of its decision in *Reed v. United Transportation Union,* —— U.S. ——, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). The narrow question which we must address is whether Section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), provides the appropriate borrowed statute of limitations period for the plaintiffs' claims under Section 101(a)(1) of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(1). In our earlier decision, we concluded that it did; we must now return to our labors with the benefit of the Supreme Court's decision and direction in *Reed.*

A more complete discussion of the background to this case is provided in our earlier decision. *Clift I,* 818 F.2d 623 (7th Cir. 1987) (per curiam). Briefly, the named plaintiffs are four employees of International Harvester's engine assembly plant located in Indianapolis, Indiana (Harvester). The plaintiffs, together with approximately 350 other Harvester employees, were laid off from the plant prior to the collective bargaining negotiations between Harvester and the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (International) in late 1981. After Harvester and the International reached a tentative agreement on a new contract, the Local distributed notices to the plant employees announcing a May 2, 1982, meeting. The purpose of the meeting was to vote on the new contract; however, employees who had been laid-off were not notified by the Local because it did not consider them to be in good standing or otherwise eligible to vote. Of particular concern to the laid-off employees is the provision in the contract creating a "Master Recall List." As we explained in *Clift I* at 625:

> The new contract provided for the keeping of a national list, by seniority, of eligible persons on layoff. If a particular Harvester operation had no local employees on layoff, those on the Master List were eligible to fill any job openings.

Once hired at a new operation, that person took his seniority from his prior bargaining unit with him and thus could have higher seniority than persons who had worked at that particular operation for a longer period of time.... On March 7, 1983, the first of several hundred transferees began work at the Indianapolis plant and were placed on the seniority list above some of the employees who had worked at the plant prior to March 7.

On September 6, 1983, one day short of six months after the first transfer employees arrived at the Indianapolis plant, the plaintiffs filed suit against the International, the Local, and Harvester, alleging claims under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and Section 101(a)(1) of the LMRDA. Plaintiffs also sought to have their case certified as a class action. On subsequent cross-motions for summary judgment, however, the district court granted judgment on behalf of the union-defendants. The court held that the appropriate statue of limitations governing plaintiffs' claims under both the LMRA and LMRDA was the six-month period found in Section 10(b) of the NLRA. Furthermore, the court found that plaintiffs' cause of action accrued on May 2, 1983, when the collective bargaining agreement was signed, rather than when the first transferees arrived. Accordingly, the district court held that the plaintiffs' claims were time-barred and that it was unnecessary to address their request for class certification.

We affirmed on appeal. Relying upon the Supreme Court's decision and analysis in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), we held the six-month statute of limitations found in Section 10(b) of the NLRA was the proper borrowed limitations period for plaintiffs' claims under Section 301 of the LMRA as well as their claims under Section 101(a)(1) of the LMRDA. *Clift I,* 818 F.2d at 628–

29.[1] The plaintiffs-appellants responded by filing a successful petition for certiorari with the Supreme Court. On February 21, 1989, the Court vacated and remanded our decision for reconsideration in light of its holding in *Reed*.

In *Reed*, the Court addressed the conflict among the federal circuits, seemingly precipitated by *DelCostello*, regarding the appropriate borrowed limitations period for a claim by a union member that his or her free speech or assembly rights were violated by the union in contravention of Title I of the LMRDA, Section 101(a)(2).[2] *Id.* at 625 and n. 3 (citing conflicting circuit court decisions, including our decision in this case). The Court reaffirmed the general rule that when Congress fails to provide a statute of limitations period for a federal cause of action, "resort to state law remains the norm for borrowing of limitations periods." *Id.* at 625. The Court emphasized that in labor law as much as in any other area, the exception to this rule is a narrow one:

> We decline to borrow a state statute of limitations only 'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.'

*Id.* (quoting *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294).

In determining whether the foregoing exception applied to Section 101(a)(2), the Court concluded that because Congress was seeking to protect the First Amendment rights of union members, there were "evident similarities" between Section 101(a)(2) and 42 U.S.C. § 1983 since the latter "prohibits the infringement of First Amendment rights by persons acting under color of state law." *Reed*, 109 S.Ct. at 626-27. Consequently, the Court found that a claim under Section 101(a)(2) was akin to a state law personal injury claim. It thus held that the applicable limitations period should be drawn from the state's personal injury statutes, which are to be identified in conformity with its decision in *Owens v. Okure*, —— U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (a state's general or residual statute of limitations governing personal injury actions is the appropriate borrowed period when more than one limitations period exist for differing personal injury actions). The *Reed* Court also emphasized that the longer time-period generally provided in such state statutes would accommodate the practicalities of Section 101(a)(2) litigation—that is, allowing the plaintiff sufficient time to identify his or her injury, to make the decision whether to antagonize union leadership by bringing a suit, and to subsequently find a

---

**1.** We concluded that plaintiffs' claims against Harvester and the Union under Section 301 were more like a hybrid Section 301/duty of fair representation claim analyzed in *DelCostello* rather than the type of straightforward breach of contract claim under Section 301 analyzed in *International Union, United Automobile Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). We thus held that plaintiffs' Section 301 claims were time-barred under *DelCostello*, which held that the limitations period for such claims is the six-month period found in Section 10(b) of the NLRA. We then concluded that the reasoning in *DelCostello* regarding the appropriate limitations period was equally applicable to plaintiffs' claims under Section 101(a)(1) of the LMRDA. We do not understand the former conclusion about the nature of plaintiffs' Section 301 claims to be at issue on remand.

**2.** In pertinent part, Sections 101(a)(1) and (2) of Title I provide:

(a)(1) Equal rights

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) Freedom of speech and assembly

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established rules pertaining to the conduct of meetings....

lawyer once that decision is made in the affirmative. *Reed,* 109 S.Ct. at 627.

Because of its conclusions regarding the similarity between Section 101(a)(2) and § 1983 and the practicalities of litigation under the former statute, the Court concluded that it was required to borrow from the state's personal injury statutes absent a compelling demonstration that there were federal policies at stake in Section 101(a)(2) actions which would render a federal limitations period "a significantly more appropriate vehicle for interstitial law-making." *Id.* In making this assessment, the Court distinguished the federal policies implicated by a Section 101(a)(2) claim from those at issue under a hybrid § 301/ duty of fair representation claim. It found that a free speech or assembly claim under Section 101(a)(2) would only tangentially affect the federal interests in stable collective bargaining relationships or dispute settlement processes. *Reed,* 109 S.Ct. at 629. The Court concluded that this limited impact was not sufficient enough to compel the application of a federal statute of limitations to such claims. With direct relevance to the present case, the Court stated:

> One class of Title I actions may have more direct effect on collective bargaining. Union members may attempt to challenge a collective bargaining agreement by alleging that the union denied them the proper opportunity 'to participate in the deliberations and voting' to ratify the agreement, in violation of LMRDA § 101(a)(1). We have no occasion in this case, which involves a § 101(a)(2) free speech claim, to decide what statute of limitations applies to other Title I actions. We note, nevertheless, that however direct an effect some Title I claims may have on the collective bargaining agreement or on private dispute resolution, Title I claims all serve the core function of enhancing union democracy through enforcement of the right of union members, not of protecting the integrity of collective bargaining or of grievance-and-arbitration procedures.

*Reed,* 109 S.Ct. at 629 n. 6 (citations omitted).

■ The foregoing observation and the Court's analysis in *Reed* make it clear that a state's limitations period for a personal injury action also provides the appropriate borrowed limitations period for an employee's equal protection claim under Section 101(a)(1) of the LMRDA. To begin with, the similarities between an equal protection claim under Section 101(a)(1) and one brought under 42 U.S.C. § 1983 are as evident as those involving free speech or assembly under Section 101(a)(2). Moreover, the practicalities of Section 101(a)(1) litigation are no different in kind or degree than those that a union member might encounter under Section 101(a)(2). Thus, the longer limitations period generally provided in a state's personal injury statute would better accommodate the needs of a plaintiff pursuing an equal protection claim. These conclusions take us to the question of whether the "federal policies at stake in § 101(a)(1) actions" more appropriately require a federal limitations period. *Reed,* 109 S.Ct. at 627 (quoting *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294.)

In *Clift I,* we were persuaded that they did. We found that the Supreme Court's reasoning in *DelCostello* was appropriately applied to the plaintiffs' hybrid § 301 claims as well as their equal protection claims under Section 101(a)(1) since, at least in this case, both involved the formation of the collective bargaining agreement, one of the "consensual processes that federal labor law is chiefly designed to promote." *Clift I,* 818 F.2d at 628 (quoting *Hoosier Cardinal,* 383 U.S. at 702, 86 S.Ct. at 1111). We saw both claims as serving the same ends notwithstanding the fact that the "Union's alleged improprieties arose during negotiations not during a grievance procedure." *Clift I,* at 628. The Supreme Court's decision in *Reed,* however, makes it clear that we misperceived the distinct policy interests underlying these two types of claims:

> Even if it were the case, however, that Title I violations may constitute unfair labor practices and breaches of the duty of fair representation—questions we need not delve into today and upon which we express no opinion—we would still hold this [family resemblance between

the claims] inconclusive as regards the question whether § 101 actions should be governed by a state statute of limitations or by NLRA § 10(b). In contrast to the situation in *DelCostello*, an overlap between Title I violations and unfair labor practices or breaches of the duty of fair representation would not be attributable to similar federal policies underlying each of these areas of protection, for the policies behind Title I, on the one hand, and NLRA § 8(b) and the implied duty of fair representation on the other, are quite different.

*Reed*, 109 S.Ct. at 630, n. 7.

■ In *Clift I*, we did not fully take into account Congress' overriding purpose in passing the equal rights and privileges provisions of Section 101(a)(1): it was seeking to further the LMRDA's "primary objective of ensuring that unions would be democratically governed and responsive to the will of their memberships." *Finnegan v. Leu*, 456 U.S. 431, 435–36, 102 S.Ct. 1867, 1870, 72 L.Ed.2d 239 (1982). To that end, both Sections 101(a)(1) and (a)(2) of Title I were designed to serve as the union members' statutory counterpart to the Bill of Rights of the Constitution. *See generally United Steelworkers of America, AFL–CIO–CLC v. Sadlowski*, 457 U.S. 102, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982) (specifically reviewing legislative history of Section 101(a)(2)). Like the Bill of Rights, Title I directly confers specific rights upon union members, thus empowering them to protect their own interests in the context of an intra-union dispute. *See e.g.* 105 Cong.Rec. S5806 (daily ed. April 22, 1959) (Remarks of Sen. McClellan), *reprinted in* 2 LEGISLATIVE HISTORY OF THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959 1098. In a word, Title I seeks to protect the political or civil rights of union members;

an infringement upon the equal rights and privileges of a union member in violation of Section 101(a)(1) is analogous to an infringement of one's constitutional rights, the latter being redressible under § 1983. Although the claims in this particular case bear upon formation of the collective bargaining agreement, this alone is insufficient under *Reed* to compel the application of a federal limitations period.

Accordingly, we remand this case to the district court with directions to reinstate plaintiffs' claims under Section 101(a)(1) of the LMRDA,[3] and to address their request to have the case certified as a class action.[4] The defendants' contention that plaintiffs' claims are time-barred shall be addressed in a manner not inconsistent with this opinion.

REMANDED WITH DIRECTIONS.

---

3. In *Vallone v. Local Union No. 705, International Brotherhood of Teamsters*, 755 F.2d 520, 521–22 (7th Cir.1985), a per curiam opinion preceding *Clift I*, we extended the Supreme Court's analysis in *DelCostello* to the plaintiffs' claims under Section 101(a)(1) of the LMRDA. To the extent that our decision in *Vallone* is in conflict with the holding in the present case, it is also hereby overruled. We also note that in *Legutko v. Local 816, International Brotherhood of Teamsters*, 853 F.2d 1046, 1049–53 (2nd Cir. 1988), a case decided before the Supreme

Court's decision in *Reed*, the Second Circuit relied, in part, on our decisions in *Vallone* and *Clift I* to hold that plaintiffs' claims under Section 101(a)(1) were governed by the six month period found in Section 10(b) of the NLRA. We believe that *Reed* resolves any conflict between *Legutko* and our present decision.

4. We express no opinion as to the merits of plaintiffs' class certification request.