Forrest G. ENGLISH and Robert M. Owens, Plaintiffs,

v.

Donald SIDDENS, et al., Defendants.

Nos. 79–3022, 84–3271 and 84–3299.

United States District Court, C.D. Illinois, Springfield Division.

Nov. 30, 1990.

Forrest Gene English, Robert M. Owens, Springfield, Ill., for plaintiffs.

Michael O'Hara, Springfield, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

The "English Cases" in this Court have nearly taken on a life of their own. We say *nearly* because, unless a court of review takes a contrary view, these cases meet their demise with our ruling today.

### I.  BACKGROUND

What we deal with now are the remnants of a litigation campaign by these two *pro se* Plaintiffs against their former union. Either separately or jointly, these two Plaintiffs have filed a total of ten lawsuits against their former union and its officers.[1]

Of these ten, the five that remained on December 9, 1985 were consolidated by order of the Court into case 84–3299. Three of those suits, *English v. Local Union No. 46*, No. 79–3022 (Case I), *English v. Siddens*, 84–3271 (Case II), and *English v. Cowell*, No. 84–3299, (Case IV) were dismissed by this Court on statute of limitations grounds. *English v. Cowell*, 117 F.R.D. 137 (C.D.Ill.1987). Plaintiffs unsuccessfully appealed the dismissals to the Seventh Circuit Court of Appeals. Plaintiffs then filed an appeal with the Supreme Court.

---

**1.** The litigation offensive of these two *pro se* Plaintiffs has now achieved the dubious distinction of spanning three decades. To date, the Plaintiffs have been unsuccessful in every suit. It can safely be said that this litigation has been unworthy of the resources it has required of the Court and the Defendants.

In the interim, the Supreme Court issued its decision in *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). This consolidated case was then remanded to this Court for consideration of the effect *Reed* has upon our dismissal of these three cases.

These cases allege numerous violations of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA). Case I, No. 79–3022, alleges violations of LMRDA § 101(a)(1)'s guarantee of equal rights, § 101(a)(2)'s guarantee of free speech, and § 101(a)(3)'s mandatory procedures for implementing dues increases. Case II, No. 84–3271, alleges further violations of § 101(a)(3). Case IV, No. 84–3299, alleges that Plaintiff English's right to due process in disciplinary proceedings guaranteed by § 101(a)(5) was violated.[2]

The LMRDA does not provide a statute of limitations for violations of Title I of that Act. Under the general borrowing rule, the Court must then look to state law and apply the most analogous statute of limitations under state law. The magistrate who first reviewed this question recommended applying Illinois' five-year "catch-all" statute of limitations[3]. Relying on *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983), this Court held that no Illinois statute of limitations was sufficiently analogous and applied instead the six-month statute of limitations of the National Labor Relations Act (NLRA) § 10(b), 29 U.S.C. § 160(b).

Following remand from the Seventh Circuit Court of Appeals, this Court attempted to expedite these cases by ordering the parties to submit memoranda on the effect of *Reed* on the statute of limitations issue. Our order required Plaintiffs to submit their memorandum by a specified date. Defendants then had 14 days to respond, and Plaintiffs had 7 days thereafter to file a reply. Consistent with their prior conduct during this protracted litigation, Plain-

tiffs filed their memorandum late. Despite having followed their own schedule in preparing their memorandum, Plaintiffs failed to even cursorily address the issue of the applicable statute of limitations after *Reed.*

Defendants, though deprived of any position to respond to, amply set forth their arguments that *Reed* should not lead the Court to change its earlier determination that the NLRA's six month statute of limitations should control this case. Defendants also requested and received leave of this Court to file motions to dismiss or in the alternative for summary judgment in the event that the Court finds these actions not to be time-barred.

## II. APPLICABLE STATUTE OF LIMITATIONS

■ Our analysis of the applicable statute of limitations must, of course, begin with *Reed v. United Transportation Union, supra.* In *Reed,* the Supreme Court held that action under LMRDA § 101(a)(2) were governed by the state statute of limitations for personal injury cases rather than by the six month statute of limitations provided for in § 10(b) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(b). The general borrowing rule requires the borrowing of a state statute of limitations, except "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Reed,* 109 S.Ct. at 625 (quoting *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294–95). *DelCostello* involved an employee's hybrid § 301/fair representation claim. The six-month limitation of § 10(b) applied in that case was "attuned to … the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's in-

---

**2.** Section 101 of the Labor Management Reporting and Disclosure Act is codified at 29 U.S.C. § 411. For the sake of clarity, we omit parallel citations to this section of the U.S.C. in the text of the opinion.

**3.** *See* Ill.Rev.Stat. ch. 110 ¶ 13–205 (1982).

terest in setting aside what he views as an unjust settlement under the collective-bargaining system." *Reed,* 109 S.Ct. at 628 (quoting *DelCostello* at 172, 103 S.Ct. at 2294–95).

By contrast, claims under § 101(a)(2) of the LMRDA only tangentially implicate those same interests. *Reed,* 109 S.Ct. at 618. Rather, Title I of the LMRDA is patterned after the Bill of Rights. A claim under § 101(a)(2) is analogous to a First Amendment claim and thus the state's statute of limitations for personal injury actions should be applied. *See Reed* at 626. The *Reed* Court indicated that all § 101(a)(2) suits should be characterized in the same way, since "litigation as to the collateral question of the appropriate statute of limitations for a § 101 claim would likely interfere with Congress' aim that actions to enforce free speech and association rights should in fact enhance union democracy." *Reed* at 627.

The state statute-of-limitations for personal injury actions was also appropriate because such statutes provided a sufficient period of time for the Plaintiff to identify the injury, make the decision of whether to antagonize union leadership by bringing a lawsuit, and select an attorney once that decision was made. *Id.*

Reasoning from *Reed,* the Seventh Circuit Court of Appeals determined in *Clift v. International Union, UAW,* 881 F.2d 408 (7th Cir.1989), that the state statute of limitations for personal injury actions should also govern actions under LMRDA § 101(a)(1). *Clift* at 411. LMRDA § 101(a)(2), providing for equal rights for members of labor organizations, is analogous to an equal protection claim under 42 U.S.C. § 1983. *Id.* The *Clift* Court further stated "Title I seeks to protect the political or civil rights of union members...." *Id.* at 412.

Although claims under LMRDA §§ 101(a)(3) and 101(a)(5) are not as analogous to interests protected by 42 U.S.C. § 1983 as are §§ 101(a)(1) and 101(a)(2), both are aimed at protecting the political and civil rights of union members and both are supportive of Congress' goal of "union democracy." Considering these facts and the guidance of *Reed* and *Clift,* this Court holds that claims under LMRDA §§ 101(a)(3) and 101(a)(5) are governed by the state statute-of-limitations for personal injury actions. Therefore, Illinois' two year statute-of-limitations for personal injury actions [4] governs this case.

### Claims under §§ 101(a)(1), 101(a)(2)

Plaintiff English, a.k.a. Guy Levine, complains in Case 79–3022 that his guarantee of equal rights under LMRDA § 101(a)(1) was violated by the holding of an irregularly scheduled meeting on December 17, 1976. Plaintiff also complains that his right to free speech under § 101(a)(2) was violated by the entry of "an arbitrary gag order against the Plaintiff forbidding him to speak when Plaintiff attempted to have Trogolo adjourn the illegal meeting and to conduct no official union business at said meeting...." [5]

As this case (79–3022) was filed on January 31, 1979, these complaints are clearly barred by Illinois' two-year statute of limitations.

### Claims under § 101(a)(3)

Plaintiff English complains of several violations of § 101(a)(3)(A). In case 79–3022, English complains of dues increases [6] implemented on January 1, 1977 and January 1, 1989. In case 84–3271, filed June 15, 1984, both Plaintiff Owens and Plaintiff

---

4. Ill.Rev.Stat. ch. 110, ¶ 13–202 (1990).

5. Plaintiffs' Second Amended Complaint, p. 12.

6. The monthly dues increases were to cover increases in per capita taxes payable to the international. Per capita taxes may also fall within the ambit of § 101(a)(3). "Whether

there has been an increase in dues must be determined not by who imposed the exaction but by the nature of the imposition and its direct effect upon the financial burden of the individual members." *King v. Randazzo,* 234 F.Supp. 388, 394 (E.D.N.Y.1964), *aff'd,* 346 F.2d 307 (2d Cir.1965).

English complain of dues increases effective January 1, 1982 and January 1, 1984 [7].

Under Illinois' two-year statute of limitations, complains about the January 1, 1977 dues increase and the January 1, 1982 dues increase are time-barred. Therefore, these claims are dismissed.

## III.   SUMMARY JUDGMENT

█ The claims in cases 79–3022 and 84–3271 regarding the January 1, 1979 and the January 1, 1984 dues increases are not time barred. We therefor consider Defendants' motion for summary judgment as to these claims. Plaintiffs complain that the union dues were raised without a majority vote by secret ballot as they contend § 101(a)(3)(A) requires. Plaintiffs, however, totally ignore § 101(a)(3)'s alternate means of approving a dues increase. We excerpt from § 101(a)(3):

> (3) **Dues, initiation fees, and assessments**
>
> Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—
>
> (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or
>
> (B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention....

It is uncontested that there was proper compliance with the provisions of § 101(a)(3)(B). Plaintiffs contend that since the local union dues were already greater than the sum of the dues payable to the International and the premium on a death benefit provided to union members, the local must either pay the increase in International dues out of its own revenues or pass the dues increase in a referendum by secret ballot. Plaintiffs offer no authority to support their argument [8] and we consider it to be meritless. There is absolutely nothing in the language of § 101(a)(3) to suggest that the "or" between §§ 101(a)(3)(A) and 101(a)(3)(B) be read out when the local collects dues of its own. Holding that § 101(a)(3)(B) was not applicable to union locals that charged dues to cover their own operating expenses would, as a practical matter, mean that all dues increases would have to be approved pursuant to § 101(a)(3)(A). Such an interpretation would be contrary to Congress' clearly expressed intent of providing alternate means of approving dues increases.

Therefore, Defendants are granted summary judgment on Plaintiffs' challenge to the January 1, 1979 and January 1, 1984 dues increases.

### The § 101(a)(5) Claim

█ In case 84–3299 Plaintiffs Forrest English, a.k.a. Guy Levine, and Robert M. Owens claim that English was terminated from union membership in violation of § 101(a)(5). Outside of being listed as a Plaintiff, the only mention of Plaintiff Owens is in paragraph five of the complaint. That paragraph claims that unknown conspirators are liable in the same manner as

---

7. If the expulsion of Plaintiff English, a.k.a. Guy Levine was valid, Plaintiff English was no longer a member of the union on January 1, 1984, and thus lacks standing to challenge this increase. English's expulsion is challenged in case 84–3299, discussed *infra*.

8. Plaintiffs complaint repeatedly refers to the dues increases as illegal because not approved of by secret ballot as required by § 101(a)(3)(A).

One reading Plaintiffs' complaint would be unaware that § 101(a)(3)(B) was complied with, or even that it existed. Plaintiffs' current position is suggested in at least one paragraph of the thirty-five page complaint, but it is not brought to the fore until Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment.

the named Defendants for the harm suffered by Owens and English as a result of English's expulsion[9]. There is no mention of how Owens was harmed by English's expulsion. We are unaware of any relationship between these two Plaintiffs that would provide Robert Owens with standing in this matter.

The body of the letter of December 27, 1983 informing Forrest English of his expulsion from the union reads as follows:

> Dear Sir:
>
> We have noted the fact that you are convicted of a felony and are serving a long term in prison.
>
> In view of this, your membership in the local union has been terminated effective immediately. You already have a copy of the Constitution and By–Laws of the International Union and the Local Union. Please do not send any further dues or money of any nature or kind whatsoever to the local union. Any further attempts to send dues to the local union will be returned to you.

■ The union's letter may fairly be read as indicating that Plaintiff's status as a convicted felon serving a long prison term prohibited him from belonging to the union. Such a determination would be consistent with the union's requirement that members be "of good moral character and competent to demand standard union wages."[10] The objective reclassification of a worker based on his failure to practice a trade is not "discipline" within the meaning of § 101(a)(5). *See Macaulay v. Boston Typographical Union No. 13,* 692 F.2d 201

(1st Cir.1982). Similarly, the determination that Plaintiff who was serving a fifteen year prison sentence for unlawfully restraining and sexually assaulting a fifteen year old boy was not competent to demand standard wages (since he was in prison) and not of "good moral character" is not "discipline". Because the decision that Plaintiff was no longer qualified to be a member in the union was not "discipline" within the meaning of § 101(a)(5), the requirements of § 101(a)(5) simply do not apply.

■ Even if the termination of the membership of Forrest English, a.k.a. Guy Levine, *was* "discipline", Defendants would still be entitled to summary judgment. "Section 101(a)(5) does not require the 'full panoply of procedural safeguards found in criminal proceedings.'" *Gustafson v. American Train Dispatchers' Ass'n,* 788 F.2d 1284, 1287 (7th Cir.1986) (quoting *Frye v. United Steelworkers of America,* 767 F.2d 1216, 1223 (7th Cir.), *cert. denied,* 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461 (1985). Rather, § 101(a)(5) requires only that the charging party produce some evidence to support its charges. *Gustafson* at 1287. Forrest English had been convicted following a criminal trial where he was accorded the "full panoply of procedural safeguards found in criminal proceedings." His conviction was a matter of public record. Given the requirements for membership, and the higher standard of proof required in criminal cases, the charges that he was convicted of were sufficient to support any "discipline" against him.

---

9. Because a simple summary cannot do it justice and to convey the flavor and quality of Plaintiffs' complaint, we present paragraphs four and five of Plaintiffs' second amended complaint in full.

> 4. The Plaintiffs are ignorant of the true names and capacities of DOE I, DOE II, DOE III, DOE IV and DOE V, whom plaintiffs allege participated with the other defendants named herein in an illegal conspiracy to willfully violated the plaintiff Ferrest English's constitutional and statutory rights under federal law, and therefore they are sued by such fictitious names and plaintiffs pray that their true names and capacities, when ascertained, may be incoporated herein, by appropriate amendment.

> 5. That plaintiffs are informed and believe, and upon such information and belief allege that each of the persons designated herein as DOE is responsible [sic] in the same manner for the events and happenings herein referred to that caused Forrest G. English and Robert M. Owens to be deprived, illegally, and without due process of laws, of their rights guaranteed by the ACT and by the Constitution of the United States, and who caused the plaintiffs injuries and damages proximately thereby as herein alleged.

10. Article II, Section 2, of the Constitution of the International Association of Bridge, Structural and Ornamental Iron Workers, Membership Requirements.

## IV. ALTERNATIVE DISPOSITION

■ The history of this litigation leads the Court to believe that these cases will be appealed. It therefore seems prudent, despite our granting of summary judgment, for the Court to proceed to consider alternate grounds for terminating this litigation.

On numerous occasions, this Court has found it necessary to impose sanctions upon the Plaintiffs as a result of their irresponsible conduct in these cases. It came to the Court's attention that Plaintiffs had not seen fit to pay any of the attorney's fees or costs this Court had imposed as sanctions. Consequently, on October 12, 1990, the Court entered an Order to Show Cause requiring Plaintiffs to explain why these cases should not be dismissed for Plaintiffs' failure to comply with the Court's orders.

Plaintiffs' response admitted that they had not paid any of sanctions, but argued that the cases should not be dismissed for their failure to comply with Court's orders since the Court had been misled by the Defendants' lies and the Court's orders were incorrect.

This Court is not persuaded by Plaintiffs' response. In our Order to Show Cause we noted that two purposes were served by imposing attorney's fees and costs as a sanction. *First,* such monetary sanctions are intended to deter the filing of frivolous motions and the naming of Defendants clearly not liable for the complained of actions. *Second,* the imposition of attorney's fees and costs as a sanction reduces the extent to which frivolous motions may be used to harass and impose costs on an innocent party. Where, as here, Plaintiffs are proceeding *pro se* and Defendants are represented by counsel, the potential for abuse is especially great. Obviously, the imposed sanctions fail in their purposes when the Plaintiffs can disregard them with impunity.

In addition to disregarding the Court's orders to pay sanctions, Plaintiffs continue to file frivolous motions.[11] The failure of the Plaintiffs to comply with this Court's previous orders regarding sanctions and the continued filing by Plaintiffs of frivolous motions lead this Court to the conclusion that it is appropriate to dismiss these cases for Plaintiffs' failure to comply with this Court's orders.

## V. SANCTIONS

■ Plaintiffs, in their memorandum that was to address the effect of *Reed* on the statute of limitations question, ignored that issue, rehashed their substantive claims, and reargued their claim for access to the books and records of the Defendant union. This was done despite the fact that such claim, contained in Case III (78–3116), was dismissed both as a sanction for Plaintiffs' persistent misconduct during the course of this litigation, and because, after more than nine years of litigation, the discovery process had rendered the issue moot. *English v. Cowell,* 117 F.R.D. 128 (C.D.Ill.1987). The Defendants felt it necessary to reply to Plaintiffs' reassertions of this previously decided issue. Consequent-

---

11. On August 13, 1990, Plaintiffs filed a twenty-four page motion that sought, among other things, the right to examine the books of the local union. Plaintiffs did not mention that this same right was the basis for case 78–3116 which was dismissed by this Court as a sanction for Plaintiffs' misconduct and, alternatively, because nine years of discovery had made the motion moot. *English v. Cowell,* 117 F.R.D. 128 (C.D.Ill.1987). This order was affirmed by the Seventh Circuit Court of Appeals in an unpublished order. On October 3, 1990, Plaintiffs filed a "motion to move calendar ahead and to allow deposition of Charles Jack Connor". Mr. Connor is the former recording secretary for the union. Again, the gist of the motion was that Plaintiffs should be allowed to further examine the books. As the most recent of these cases was filed six years ago, we are well past the appropriate time for discovery. On November 15, 1990, Plaintiffs filed a motion entitled "Objections to the 'After-the-Fact' Bogus Records filed by Defendants; and Request for Relief". In that motion they make the new allegation that "Siddens, as treasurer, has fabricated a 'Second Set of Books' *separate and different* from that kept by Connor". Plaintiff also insinuates that Defendants' attorney, Mr. O'Hara, is guilty of Rule 11 violations. Finally, we note, that it appears Plaintiffs have been offered several opportunities to examine the books, but they inevitably fail to show up to conduct their much sought after examination.

ly, Defendants filed a Rule 11 motion for attorney's fees incurred in answering Plaintiffs' reassertion of this *res judicata* issue.

Defendants ask for attorney's fees for four and one half hours at $90.00 per hour. The Court agrees that the reargument of these issues was frivolous, but as it would have been sufficient for Defendants to merely point out that the issue was *res judicata*, we feel that one hour of time would have been sufficient to address the issue. We therefore award Defendants $90.00 as attorney's fees pursuant to Fed. R.Civ.Pro. 11.

Defendants have also moved for sanctions and attorney's fees in response to Plaintiffs' "Motion to Move Calendar Ahead and to Allow Deposition of Charles Jack Connor". As already noted in a footnote, the Court agrees Plaintiffs' motion was frivolous. Defendants' motion for sanctions and attorney's fees incurred in responding to Plaintiffs' "Motion to Move Calendar Ahead ..." is ALLOWED. Accordingly, Mr. O'Hara may submit a petition for fees incurred by his clients in responding to Plaintiffs' motion.

*Ergo*, Plaintiffs' claims regarding the meeting of December 17, 1976 and the dues increases of January 1, 1977 and January 1, 1984 are DISMISSED AS TIME BARRED. Plaintiff Owens' complaint that Plaintiff English was terminated in violation of § 101(a)(5) is DISMISSED FOR LACK OF STANDING. Defendants' motion for summary judgment is ALLOWED AS TO ALL OTHER COUNTS. Defendants' motion for Rule 11 sanctions based on Plaintiffs' reassertion of claims for access to Defendants' books is ALLOWED IN PART. Defendants' most recent motion for Rule 11 sanctions is ALLOWED.

All other motions pending in this cause are DENIED AS MOOT.

CASES 79–3022, 84–3271 AND 84–3299 ARE CLOSED.