James H. MARSHALL, II; Mark Simaku; Gary Schaefer; Anthony Johnson; Kevin Adkins, as class representatives of all of the production and maintenance employees in Anheuser–Busch's St. Louis, Missouri Yeast Plant, Appellants,

v.

LOCAL UNION NO. 6, BREWERS AND MALTSTERS AND GENERAL LABOR DEPARTMENTS; Anheuser–Busch Companies, Incorporated (a corporation); Anheuser–Busch Incorporated (a corporation); Busch Industrial Products Corporation (a corporation); A–B Contract Services Company (a corporation), Appellees.

James H. MARSHALL, II; Mark Simaku; Gary Schaefer; Anthony Johnson; Kevin Adkins, as class representatives of all of the production and maintenance employees in Anheuser–Busch's St. Louis, Missouri Yeast Plant, Appellees,

v.

LOCAL UNION NO. 6, BREWERS AND MALTSTERS AND GENERAL LABOR DEPARTMENTS, Appellant.

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; Anheuser–Busch Companies, Incorporated (a corporation); Anheuser–Busch, Incorporated (a corporation); Busch Industrial Products Corporation (a corporation); A–B Contract Services Company (a corporation).

James H. MARSHALL, II; Mark Simaku; Gary Schaefer; Anthony Johnson; Kevin Adkins, as class representatives of all of the production and maintenance employees in Anheuser–Busch's St. Louis, Missouri Yeast Plant, Appellees,

v.

LOCAL UNION NO. 6, BREWERS AND MALTSTERS AND GENERAL LABOR DEPARTMENTS, Appellant.

International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; Anheuser–Busch Companies, Incorporated (a corporation); Anheuser–Busch, Incorporated (a corporation); Busch Industrial Products Corporation (a corporation); A–B Contract Services Company (a corporation).

Nos. 91–1392, 91–1528 and 91–2061.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1991.

Decided April 1, 1992.

Louis Gilden, St. Louis, Mo., argued, for appellants.

Arthur J. Martin and Thomas C. Walsh, St. Louis, Mo., for appellees.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and VAN SICKLE,* Senior District Judge.

BOWMAN, Circuit Judge.

This case is before us on appeal and cross-appeal from orders granting summary judgment, orders granting motions for directed verdict, and judgment on a jury verdict, all relating to claims brought under the federal labor laws. We affirm the rulings challenged in the appeal and reverse the judgment challenged in the cross-appeal.

James A. Marshall is a class representative of sixty-five former yeast workers who were employed in a St. Louis, Missouri, yeast plant operated, at the time this lawsuit was filed, by Anheuser–Busch Contract Services Company (ABC Services) [1], a subsidiary of Anheuser–Busch Companies, Inc. (the Company). The yeast workers were represented by Local Union No. 6, Brewers and Maltsters and General Labor Departments (Local 6 or the Local), under a collective bargaining agreement with ABC Services. Local 6 also represented the St. Louis brewery workers employed by Anheuser–Busch, Inc., another subsidiary of the Company, under a separate collective bargaining agreement.[2] Local 6 is an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the International).

In early spring 1987, the Company announced that the St. Louis yeast plant would be sold and/or closed. The Company told Local 6 that the yeast workers would lose their jobs if and when the plant closed, as the Company had no obligation to hire them for other employment within the Company or its subsidiaries. The Executive Board of Local 6 met and agreed to pursue an agreement with the Company to give the yeast workers rights to transfer to the brewery, with dovetailed seniority once placed in the brewery unit.[3] The Local 6 representative followed this course, but without success.

In June 1987, the Company submitted a proposal to Local 6, which the parties refer to as the June 30, 1987, Memorandum of Understanding. The Memorandum provided for the transfer of yeast plant workers to the brewery under certain conditions, but with endtailed seniority except as to vacation. Local 6 conducted meetings with the yeast workers at which voice votes on the proposal were taken. Following these meetings, the Local representative signed the Memorandum of Understanding on behalf of the yeast workers' collective bargaining unit.

Negotiations began in August 1987 for a new collective bargaining agreement between the brewery workers represented by Local 6 and the Company to replace the one due to expire on February 28, 1988. Local 6 determined that it would raise the issue of the yeast workers' transfer rights and seniority during the negotiations on the brewery workers' contract. In January 1988, the Company agreed to give the yeast workers transfer rights and dovetailed seniority, subject to the approval of the brew-

---

* The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. Anheuser–Busch Contract Services Company was the signatory to the collective bargaining agreement with the yeast workers in effect at the time this suit was filed and was the successor employer of Busch Industrial Products Corporation, also an Anheuser–Busch Companies, Inc., subsidiary, which entered into the yeast workers' collective bargaining agreement as the employer representative from 1985 to 1988.

2. According to its brief, Local 6 represented approximately 1000 employees of various subsidiaries of Anheuser–Busch Companies, Inc., in six different bargaining units. Brief of Local 6 at 9.

3. With dovetailed seniority rights, the brewers' and yeast workers' seniority lists would be merged so that yeast workers would retain their previously held yeast plant seniority after they transferred to the brewery. If seniority rights instead were endtailed, the yeast workers' seniority rights would accrue upon the date of employment in the brewery, or some other mutually agreed upon date, without full credit for the time employed in the yeast plant. Dovetailed seniority would dilute the seniority rights of many of the workers already employed in the brewery upon the transfer of the yeast workers, at least as to layoff and recall.

ery workers, if Local 6 would give assurances that the workers would remain in the plant until it closed. Local 6 prepared separate ballots for the proposed collective bargaining agreement and the transfer/seniority agreement, although the same brewery workers would be voting on both. The Local urged the members of the brewery workers' collective bargaining unit to reject the proposed collective bargaining agreement, but to ratify the agreement concerning the yeast workers' transfer rights. By presenting the two issues on separate ballots, the Local hoped the brewery workers would reject the proposed collective bargaining agreement but ratify the dovetailing amendment.

The ratification votes were taken at a union meeting of the brewery workers' collective bargaining unit on February 11, 1988. Upon the advice of counsel, only permanently assigned brewery workers were permitted to vote on the agreements. Both proposals were defeated, although the seniority agreement was rejected by a narrow margin of only nineteen votes out of approximately 500 cast.

On April 18, 1988, Marshall, a class representative in this suit, filed an internal grievance with the Local 6 Executive Board. The grievance challenged the June 30, 1987, Memorandum of Understanding entered into by Local 6 on behalf of the yeast workers, and the yeast workers' perceived lack of involvement in the content and approval of the Memorandum; the Local's failure to permit the yeast workers to comment or vote on the transfer proposal put to the brewery workers on February 11, 1988; and the Local's failure to secure dovetailed seniority rights for yeast workers transferring to the brewery. Local 6 declined to process the grievance and advised Marshall that, under the International union's constitution and bylaws, he should file his grievance with the Joint Council Executive Board. Marshall did so, but by letter dated May 24, 1988, the Joint Council declined jurisdiction of the grievance having determined that it was a collective bargaining matter.[4]

On June 24, 1988, the Local, on behalf of the yeast workers' collective bargaining unit, and the Company entered into an agreement that permitted transfer to the brewery with modified endtailing. The agreement permitted yeast workers to transfer into the brewery with seniority dates of July 29, 1986, the last date, as of the date of the agreement, that any new brewery workers had been hired. Brewery workers hired after the date of the agreement would be on notice of the senior rights of the yeast plant transferees. Thus none of the brewery workers would be adversely affected by the agreement. The agreement also cancelled the June 30, 1987, Memorandum of Understanding, with no adverse employment action having been taken against any yeast workers pursuant to the earlier memorandum.

The June 24, 1988, agreement was ratified by secret ballot vote of the yeast workers on June 28, 1988, and incorporated into the collective bargaining agreement ratified by secret ballot vote of the yeast workers in September 1988.

The Company sold the yeast plant to the Dutch firm Gist–Brocades in 1990, and it was closed in September of that year. All yeast plant employees were permitted to transfer to the brewery pursuant to the terms of the 1988 agreement. The transferred employees retain full pension, vacation, health and welfare, and supplementary unemployment benefits. Some received a salary increase pursuant to the brewery workers' collective bargaining agreement. But all transferees have a seniority date of July 29, 1986, for purposes of layoff and recall.

This lawsuit was filed on July 19, 1988. The plaintiff class alleged violations of their collective bargaining agreements by the Company (and its subsidiaries that were the signatories to the agreements) and breach of the duty of fair representation by Local 6. The class asserted rights

**4.** Marshall appealed this decision to the International. By letter dated August 3, 1989, the International advised Marshall that the Joint Council had correctly ruled it had no jurisdiction. Letter from W. Mathis to J. Marshall (Aug. 3, 1989), *reprinted in* Appellants' Appendix, vol. II at 401.

under section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185 (1988), and sections 101(a)(1) and 102 of the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 411(a)(1), 412 (1988).

On December 11, 1989, the District Court[5] granted summary judgment to Local 6 and the International on the claim that they violated section 101(a)(1) of the LMRDA by failing to permit the yeast workers to vote on the February 1988 amendment to the brewers' collective bargaining agreement that would have permitted transfer and full dovetailing for the yeast workers. The court also granted the International's motion for summary judgment on the claims under section 301 of the LMRA relating to the breach of the collective bargaining agreement and breach of the duty of fair representation, holding that the International was not a party to the collective bargaining agreement and was not a bargaining representative obligated to represent the interests of the class.[6] *See generally* Order and Memorandum of December 11, 1989, *reprinted in* Appellants' Appendix, vol. I at 161–67.

On April 11, 1990, the District Court granted the motion of the Company, and its subsidiaries that were named defendants, on the claim made under section 301 of the LMRA that they breached the collective bargaining agreement with the yeast workers. Further, the court *sua sponte* granted summary judgment to Local 6 on the same claim. *See generally* Order and Memorandum of April 11, 1990, *reprinted in* Appellants' Appendix, vol. I at 243–51.

The remaining issues, as defined by the District Court in its April 11, 1990, memorandum, were tried to a jury on November 19–21, 1990.[7] According to the District Court, those issues, with Local 6 the only defendant still in the lawsuit, were (1) whether Local 6 violated the voting rights of the class under section 101(a)(1) of the LMRDA with regard to the June 1987 Memorandum of Understanding, and (2) whether Local 6 violated its duty of fair representation. Memorandum of April 11, 1990 at 8, *reprinted in* Appellants' Appendix, vol. I at 244, 251.

At the close of the evidence, the Magistrate Judge granted Local 6 directed verdicts on the claim that the February 11, 1988, vote (where only the brewery workers were permitted to vote on the amendment to their collective bargaining agreement that would have granted dovetailed seniority to transferred yeast workers) violated the rights of the class;[8] on the voting rights claim of the yeast workers that Local 6 should have submitted to them an amendment to their own collective bargaining agreement to the same effect as that submitted to the brewery workers; and on the claim that Local 6 violated its duty of fair representation by not submitting the April 1988 internal grievance to the Company. *Marshall v. Local Union No. 6*, 756 F.Supp. 408, 410 (E.D.Mo.1991). The only issue submitted to the jury was whether the June 1987 vote violated federal labor law. Based on the jury verdict, the court entered judgment in favor of the class, finding that Local 6 had violated the bill of rights provision (presumably section

---

**5.** The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri.

**6.** The International union is not a party to the appeal or cross-appeal.

**7.** With the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (1988), The Honorable David Noce, United States Magistrate Judge for the Eastern District of Missouri, presided over the trial.

**8.** According to Judge Nangle's orders, assuming Magistrate Noce was referring to a LMRDA sec-

tion 101(a)(1) voting rights issue when granting the directed verdicts, this question had been disposed of previously on summary judgment. Memorandum of December 11, 1989 at 5, *reprinted in* Appellants' Appendix, vol. I at 162, 166 ("Defendants Local Union No. 6 and the international union are thus entitled to summary judgment as to plaintiff's [sic] LMRDA claim relating to the amendment of the brewery workers' agreement."); Order and Memorandum of September 20, 1990 at 2, *reprinted in* Appellants' Appendix, vol. I at 262, 263 (Local 6's most recent motion for summary judgment "rehashes what the Court long ago decided— that plaintiffs were properly excluded from the vote to amend the brewery workers' contract").

101(a)(1)) of the LMRDA and had breached its duty of fair representation under the LMRA. The court awarded no monetary damages, but did award attorney fees to the class. *Id.* at 412.

This appeal and cross-appeal followed.

As best as we can ascertain from the appellants' brief, the Marshall class challenges the following: (1) the District Court's decision to stay discovery after the Company defendants filed their motion for summary judgment on the breach of the collective bargaining agreement issue, and the subsequent granting of that motion; (2) the District Court's *sua sponte* grant of summary judgment in favor of Local 6 on the claim for breach of the collective bargaining agreement; (3) the granting of partial summary judgment in favor of the Local on the class's claims based on the February 1988 vote; and (4) the granting of the directed verdict in favor of the Local on the claim that the Local breached its duty of fair representation by failing to submit the April 1988 internal grievance to the Company.

On cross-appeal, Local 6 challenges the jury verdict in favor of the class on the claims based on the June 1987 vote on the Memorandum of Understanding, and the consequent award of attorney fees.

## I.

■ Before we can address the substantive issues on appeal, we must first resolve a difference of opinion among the parties as to the appropriate statute of limitations applicable to the claims of the class.

There is no federal statute of limitation applicable to the claims of the class in this suit, thus a limitations period must be "borrowed" from another source. The sources considered by the Magistrate Judge were state law, here the five-year Missouri limitations period for personal injury actions, Mo.Rev.Stat. § 516.120(4) (1986), or the much shorter six-month limitations period provided by section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1988), ordinarily applicable to the filing of unfair labor practice charges with the National Labor Relations Board. The court held that the five-year state law limitations period applied, so that the complaint of the class was timely filed. *Marshall,* 756 F.Supp. at 414.

When suit is filed against an employer, alleging a violation of section 301 of the LMRA for breach of a collective bargaining agreement, and against a labor union alleging breach of the duty of fair representation based on the same events,[9] then, according to the Supreme Court, this is a "hybrid" claim governed by the six-month statute of limitations period found in section 10(b). *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 155, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983). Clearly the present suit is a "hybrid," as the complaint included both of those claims. Thus, under the *DelCostello* analysis, the section 10(b) six-month limitations period would apply. The class's claim of a LMRDA section 101(a)(1) violation, however, throws a monkey wrench into the statute of limitations analysis, in view of a 1989 Supreme Court case and the subsequent courts of appeals opinions interpreting it.

The issue before the Court in *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), was the proper statute of limitations governing LMRDA section 101(a)(2) claims. *Id.* at 321, 109 S.Ct. at 622. Section 101 (Title I of the LMRDA) includes the so-called bill of rights provisions intended to protect democratic processes within labor organizations. *See Reed,* 488 U.S. at 325, 109 S.Ct. at 625–26. Under section 101(a)(2), labor organization members' rea-

---

**9.** "The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representa-
tive." *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 164 n. 14, 103 S.Ct. 2281, 2290 n. 14, 76 L.Ed.2d 476 (1983). Thus the duty is "implied under the scheme of the National Labor Relations Act." *Id.* at 164, 103 S.Ct. at 2290.

sonable rights of assembly and speech relating to their labor organization are protected from infringement. 29 U.S.C. § 411(a)(2) (1988). The Court found that section 101(a)(2) claims do not directly implicate "the federal interests in collective bargaining, ... which require application of a 6–month statute of limitations to unfair labor practice charges and hybrid § 301/fair representation claims," that is, the *DelCostello* situation. *Reed*, 488 U.S. at 331, 109 S.Ct. at 629. The Court held that, "[b]ecause § 101(a)(2) of the LMRDA is modeled on the First Amendment to our Constitution, there is an analogy between § 101(a)(2) claims, § 1983 claims, and state personal injury actions," and thus the appropriate state statute of limitations should apply. *Id.* at 334, 109 S.Ct. at 630.

The similarity of section 101(a)(2) claims to claims brought under section 101(a)(1), which guarantees to labor organization members equal rights and privileges as to nomination, voting, and attendance and participation at such organization's meetings, is obvious. The Court's dicta on the section 101(a)(1) question, however, is mixed:

> One class of Title I actions may have a more direct effect on collective bargaining. Union members may attempt to challenge a collective-bargaining agreement by alleging that the union denied them the proper opportunity "to participate in the deliberations and voting" to ratify the agreement, in violation of LMRDA § 101(a)(1).

*Id.* at 331 n. 6, 109 S.Ct. at 629 n. 6. Further in the same footnote, however, the Court indicated that the resolution of an actual controversy on a section 101(a)(1) statute of limitations issue might not be as implied above:

> We note, nevertheless, that however direct an effect some Title I claims may have on the collective-bargaining agreement or on private dispute resolution, Title I claims all serve the core function of enhancing union democracy through enforcement of the rights of union members, *not* of protecting the integrity of collective bargaining or of grievance-and-arbitration procedures.

*Id.* at 332 n. 6, 109 S.Ct. at 629 n. 6 (emphasis in original).

In addition, the Court granted certiorari, vacated the judgments, and remanded for further consideration in light of *Reed* two courts of appeals cases that squarely held the section 10(b) six-month statute of limitations was applicable to claims alleging section 101(a)(1) bill of rights violations. *Clift v. International Union, UAW,* 818 F.2d 623, 629 (7th Cir.1987), *cert. granted, vacated, and remanded,* 488 U.S. 1025, 109 S.Ct. 830, 102 L.Ed.2d 963 (1989); *Hester v. International Union of Operating Eng'rs,* 818 F.2d 1537, 1543–44 (11th Cir. 1987), *cert. granted, vacated, and remanded,* 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963 (1989). Arguably, the Court by its action abrogated the holdings of those cases. In any event, on remand, the Seventh and Eleventh Circuits both abrogated their previous holdings and held that the similarities between an equal rights claim under section 101(a)(1) and a free speech or assembly claim under section 101(a)(2) were such that the same statute of limitations, that is, the state statute applicable to section 1983 claims, should apply. *Clift v. International Union, UAW,* 881 F.2d 408, 412 (7th Cir.1989); *Hester v. International Union of Operating Eng'rs,* 878 F.2d 1309, 1310 (11th Cir. 1989), *cert. denied,* 494 U.S. 1079, 110 S.Ct. 1808, 108 L.Ed.2d 939 (1990); *see also Allgood v. Elyria United Methodist Home,* 904 F.2d 373, 377 (6th Cir.1990) ("after the Supreme Court's decision in *Reed,* we are persuaded that claims under either section 101(a)(1) or 101(a)(2) of the LMRDA bear more similarity to constitutional violations redressible under 42 U.S.C. § 1983 than to labor disputes, and thus are more appropriately governed by the state residual personal injury statute of limitations") (citation omitted).

A problem arises here because the vote on the June 1987 Memorandum of Understanding, one of the events for which a section 101(a)(1) claim was made and the one that would be time barred if a six-month statute of limitations applied, also was challenged on the grounds of a breach

by Local 6 of the duty of fair representation. Thus it is a "hybrid" section 101(a)(1)/breach of the duty of fair representation claim, arguably raising the same need to balance interests as do the hybrid section 301/breach of the duty of fair representation claims.

Under *DelCostello*, it was the duty of fair representation and its "family resemblance" to and "substantial overlap" with unfair labor practices that made application of the section 10(b) six-month limitations period appropriate to strike the proper balance between a claim of breach of contract against an employer and a claim of breach of the duty of fair representation against a union, both present in a hybrid claim.[10] *DelCostello*, 462 U.S. at 170, 103 S.Ct. at 2293. We might be inclined to view the "family resemblance" between equal rights claims and unfair labor practices claims as having a force equal to the "family resemblance" between fair representation claims and unfair labor practices claims in *DelCostello*, in that both claims directly implicate the union's obligation to treat its members in a just manner. The *Reed* Court, however, has disabused us of that notion:

> Even were it the case, however, that Title I violations may constitute unfair labor practices and breaches of the duty of fair representation—questions we need not delve into today and upon which we express no opinion—we would still hold this resemblance inconclusive as regards the question whether § 101 actions should be governed by a state statute of limitations or by NLRA § 10(b). In contrast to the situation in *DelCostello*, an overlap between Title I violations and unfair labor practices or breaches of the duty of fair representation would not be attributable to similar federal policies underlying each of these areas of protection, for the policies behind Title I, on the one hand, and NLRA § 8(b) and the implied duty of fair representation on the other, are quite different.

*Reed*, 488 U.S. at 333 n. 7, 109 S.Ct. at 630 n. 7. Given that admonition, we are unprepared to declare that a "hybrid" duty of fair representation/equal rights claim is governed by section 10(b).

Therefore we hold as follows: (1) the class claim for Local 6's acts relating to the June 30, 1987, Memorandum of Understanding (the "hybrid" duty of fair representation/equal rights claim) is governed by the five-year Missouri statute of limitations for personal injury actions and thus is not time-barred; and (2) the hybrid class claims alleging breach of the collective bargaining agreement (section 301(a)) and breach of the duty of fair representation are governed by the six-month statute of limitations under NLRA section 10(b), but the lawsuit was timely filed as to those claims.

Having determined that all claims in the lawsuit were timely filed, we now proceed to the merits of the appeal brought by the class.

## II.

■ The class first challenges the District Court's order staying discovery, entered pursuant to the motion of the Company and the defendant subsidiaries, once the Company's and subsidiaries' motion for summary judgment had been filed. The charge is that the class thus was prevented from deposing officials of the employer and so was unable to defend the motion for summary judgment.

We find no merit to this claim. The court neither stayed nor limited discovery from the time suit was filed in July 1988 until the time the stay was granted on February 16, 1990. In any event, as a matter of law the information that the class claims it was unable to discover would have been of no value in defending the motion for summary judgment.

---

10. It also may be significant that the state limitations period being considered by the Court in *DelCostello* was the 30-day statute of limitations period applicable to actions to vacate arbitration awards. Application of that period would have limited access to the federal courts even more strictly than would the section 10(b) period. *DelCostello*, 462 U.S. at 156, 103 S.Ct. at 2286.

The class also contends that the District Court erred in granting summary judgment *sua sponte* to Local 6 on the claim for breach of the collective bargaining agreement. The argument is twofold.

First, the class argues that the court could not grant summary judgment for Local 6 because the Local had not filed a motion requesting it. It is the rule of this Circuit, however, that a court may grant summary judgment *sua sponte*, without violating Federal Rule of Civil Procedure 56, "provided that the party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted." *Interco Inc. v. National Sur. Corp.*, 900 F.2d 1264, 1269 (8th Cir.1990). Clearly, the class was on notice that the question of whether the Company breached the yeast workers' collective bargaining agreement was before the court. The court found no breach, and then determined that its "rationale, going as it does to the merits of whether a breach of the collective bargaining agreement in fact occurred, applies with equal force to claims that the local union breached the agreement." Memorandum of April 11, 1990 at 7, *reprinted in* Appellants' Appendix, vol. I at 244, 250. Thus the merits of both claims related to the alleged breach of the collective bargaining agreement were presented and argued by the parties. "[T]he [D]istrict [C]ourt was correct in granting summary judgment on a claim dependency theory." *Interco*, 900 F.2d at 1269. Once the court granted summary judgment in favor of the Company on the claim for breach of the collective bargaining agreement, thus holding as a matter of law that there was no breach, the same claim against Local 6 evaporated.

In the second part of its argument on this issue, the class insists that *sua sponte* summary judgment was improper because breach of the collective bargaining agreement by the Company is a claim distinct from the breach of the duty of fair representation by Local 6. Thus the issue (as framed by the class) is whether a union can breach its duty of fair representation based on an alleged breach of a collective bargaining agreement by an employer, when there was in fact no breach of the collective bargaining agreement by an employer. We agree with the District Court's conclusion that without a breach of the collective bargaining agreement by the Company there could be no breach of the duty of fair representation by the Local arising out of the Company's breach. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976) ("To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union."). We conclude that the court did not err in granting summary judgment *sua sponte* to Local 6.

We turn to the next issue raised by the class. In December 1989, the District Court granted summary judgment to Local 6 on the class's claim that the yeast workers were entitled to vote in February 1988 on the amendment to the brewery workers' collective bargaining agreement, which amendment, if passed, would have granted the yeast workers dovetailed seniority upon their transfer to the brewery. The court found there was no violation of the voting rights provision of the LMRDA. The class appeals that order, claiming that since the yeast workers were affected by the result of the vote they should have been permitted to vote, and that, because the Company wanted them to vote, they should have been permitted to vote.[11]

Although the yeast workers stood to benefit from adoption of the amendment, at the expense of some of the brewery work-

---

11. With this argument, the class makes the unrelated contention that the District Court erred "in holding that the matter of alter ego issue is not relevant in determining the liability of the union in its failure to permit the yeast workers to vote." Brief of Appellant at 33. This argument is unworthy of extended discussion. Suffice it to say that the corporate structure or identity of the Company has not been shown to bear on the question of the Union's liability on this issue.

ers, the provision amended only the brewery workers' collective bargaining agreement, not any agreement with the yeast workers. Local 6 properly excluded the yeast workers, non-members of the brewery workers' collective bargaining unit, from voting on the brewery workers' collective bargaining agreement. *See Smegal v. Gateway Foods*, 763 F.2d 354, 360 (8th Cir.1985) (exclusion from voting was proper where union members seeking to vote did not become employees of successor corporation until after the vote was taken). As for the supposed desires of the Company concerning the proper parties to vote on the amendment, it could not unilaterally have altered the voting requirements under the Local's constitution and bylaws. Moreover, had the Company tried to interfere with the vote on the amendment, it might have been charged with an unfair labor practice in violation of the National Labor Relations Act. *See* 29 U.S.C. § 158(a)(1) (1988). In the circumstances, we hold that Local 6 did not violate the LMRDA by allowing only the brewery workers to vote on the proposed amendment to their collective bargaining agreement, and that the District Court properly granted summary judgment in favor of Local 6 on the class's claim to the contrary.

Finally, the class challenges the Magistrate Judge's order granting a directed verdict to Local 6 on the claim that the Local violated its duty of fair representation for its failure to submit Marshall's April 1988 internal grievance to the Company.

We have reviewed the contents of the grievance as submitted and conclude that the Magistrate Judge did not err in granting a directed verdict on this claim. First, the introductory paragraph of the grievance requests that it "be processed internally" and challenges specific actions *of Local 6*. Appellants' Appendix, vol. II at 396. All four charges challenge actions (or inaction) of the Local, not the employer, so there is nothing the Company could have done to resolve the complaints had the grievance been submitted to it. The grievance concludes, "The actions *of Local 6* are arbitrary and in bad faith to the members employed in the yeast plant." *Id.* (empha-

sis added). There was no grievance with the employer. The decision of the Magistrate Judge is affirmed.

### III.

▇ We now come to the cross-appeal by Local 6. On the only issue that went to the jury, it found in favor of the class and the Magistrate Judge entered judgment declaring that "Local Union No. 6 presented the Memorandum of Understanding to its yeast plant members for a vote on June 15, 1987, in a manner which violated federal labor law, the Bill of Rights provision of the [LMRDA] and the duty of fair representation under the [LMRA]." *Marshall*, 756 F.Supp. at 412. Neither monetary damages nor injunctive relief was granted, but reasonable attorney fees were awarded. *Id.* Local 6 appeals from that judgment.

The judgment entered found Local 6 in violation of two distinct federal labor laws: the equal rights provision of the LMRDA and the implied duty of fair representation under the LMRA. We hold that, as a matter of law, the judgment is not supported by the evidence, and therefore must be reversed.

We first address the class's claim under section 101(a)(1) of the LMRDA. That provision assures labor union members "equal rights and privileges ... to vote in elections ... subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1). It is true, and all agree, that the constitution and bylaws applicable here require a secret ballot vote by the membership of the collective bargaining unit on collective bargaining agreements, and amendments thereto, to which that collective bargaining unit is a party. Only a voice vote was taken on the Memorandum. We hold, however, that the June 30, 1987, Memorandum of Understanding upon which the class's legal challenge was based was neither a collective bargaining agreement nor an amendment thereto. Local 6 asserts that the Memorandum of Understanding was not intended to be a new agreement nor an amendment to an existing agreement and thus did not

**1370**

require a secret ballot vote for ratification under the terms of the Local's constitution and bylaws. We agree. *See Washington v. Laborer's Int'l Union,* 792 F.2d 94, 95–96 (8th Cir.1985) ("We believe that the Union's interpretation of its constitution is a reasonable one, and thus we will not substitute our judgment for that of the Union as to the meaning of its constitution.").

In any event, it is apparent from the record that there was no discrimination on this vote, as no yeast workers were excluded from voting, nor does the record demonstrate that any member of the class was deprived of his or her right to cast a meaningful vote. "The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote ... which the Union has granted to others." *Calhoon v. Harvey,* 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964); *see also Nienaber v. Ohio Valley Carpenters Dist. Council,* 652 F.2d 1284, 1286 (6th Cir.1981) (vote taken in violation of union constitution did not violate section 101(a)(1) where "the variance or irregularity [did not result] in discriminatory deprivation of an individual's right to cast a meaningful vote").

■ We also conclude that judgment notwithstanding the verdict should have been entered in favor of Local 6 on the class's claim that the Local breached its duty of fair representation by signing the June 30, 1987, Memorandum of Understanding.

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *see also Air Line Pilots Ass'n v. O'Neill,* —— U.S. ——, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (*Vaca* standard applies to all union activity). The record is devoid of evidence that Local 6 discriminated against the yeast workers in favor of the brewery workers or that the Local acted in bad faith. All of the evidence demonstrates that Local 6 used its best efforts to negotiate with the Company to acquire transfer rights and dovetailed seniority for the yeast workers who otherwise would be out of a job when the yeast plant closed. An agreement with the Company that provided for modified endtailing ultimately was reached with the assistance of Local 6, and was ratified by the yeast workers themselves. That agreement voided the June 1987 Memorandum of Understanding. Before the Local's actions may be characterized as "arbitrary," they must be "so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n,* 111 S.Ct. at 1130 (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). The class presented no evidence of any behavior on the part of Local 6 that properly could be found to be either arbitrary, discriminatory, or in bad faith.

### IV.

The orders appealed by the Marshall class are in all respects affirmed. In Local 6's cross-appeal, the judgment entered by the Magistrate Judge on the jury verdict in favor of the Marshall class is reversed. As a consequence, the order granting attorney fees to the class is also reversed.