Kevin HOWARD, Plaintiff, Appellant,

v.

UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY, LOCAL # 131, Defendant, Appellee.

No. 76–1377.

United States Court of Appeals, First Circuit.

Argued March 2, 1977.

Decided June 30, 1977.

Before COFFIN, Chief Judge, MOORE,* and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Kevin Howard sued under 29 U.S.C. § 412[1] for damages and reinstatement as a member of Local # 131, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry ("Local 131" or "the Local"). He complained that he was expelled from the Local without any of the procedural safeguards required by section 101(a)(5) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(5).[2] The Local defended on the ground that as Howard's expulsion was for nonpayment of dues, no such procedures were required. After an evidentiary hearing, the district court granted summary judgment in favor of Local 131. This appeal followed. The only issue is whether the Local may assert Howard's nonpayment of dues as a basis for expulsion where it contributed to, and did nothing to rectify, Howard's mistaken belief that the Local had already severed his connections for other reasons, so that to pay dues would have been a futile act.

Howard, in 1971, had entered into an "Apprenticeship Agreement" with the Manchester Plumbers & Steamfitters Joint Apprenticeship Committee (JAC), under which the JAC contracted to "employ and teach" Howard the trade or craft of plumber and steamfitter. Established under state law, the JAC is composed of four employer and four employee representatives. See N.H. Rev.Stat.Ann. § 278:7. Under Howard's agreement, patterned on state law, see id. §§ 278:1, 3, his apprenticeship term was to last five years, and he was found to take

Edward T. Clancy, with whom Fisher, Parsons, Moran & Temple, Dover, N. H., was on brief, for plaintiff, appellant.

Robert Christy, Manchester, N. H., with whom Christy & Tessier, Manchester, N. H., was on brief, for defendant, appellee.

* Of the Second Circuit, sitting by designation.

1.  29 U.S.C. § 412 provides in pertinent part:
    "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."

2.  29 U.S.C. § 411(a)(5) provides:

"Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

144 hours of related instruction annually. After a six-month probationary period, either party could terminate the agreement "by submitting written notification of termination to the approving agency [the New Hampshire State Apprenticeship Council]." The agreement was signed both by Howard and the Secretary of the JAC, one William G. Lavoie, an employee member who was also a member though not an officer of Local 131.

While the JAC is not in any formal sense a part of Local 131, it works closely with the Local. The JAC's employee representatives were members of the Local, and the Business Manager of Local 131 attended JAC meetings as a non-voting member. And while, as the district court observed, "[t]here is no requirement that a person desiring to take the plumber and pipe fitter apprentice training program be a member of the Union", the Business Manager of Local 131 testified that the apprentices were part of the union. He went so far as to say that Local 131 considers the JAC to be the "Committee on Apprentice Training" which section 127 of the constitution of the international union requires every local to establish. Section 162 of the union constitution provides, "Cancellation of an apprentice's agreement, for a just cause, after notice and hearing by the apprenticeship committee, shall automatically cancel his membership" in the international and the local.

In June of 1972, at the end of his probationary period under the apprenticeship agreement, Howard joined Local 131 and began paying monthly dues. He continued to do so through March 1975. Under section 176 of the constitution, a member in arrears for dues for a period of six-months "shall stand expelled".

The course of Howard's apprenticeship did not proceed smoothly. Minutes of an April 30, 1973 meeting of the JAC refer to his lack of incentive. Written on union stationery, the minutes were signed "William G. Lavoie/Secretary". The minutes for the February 12, 1974 meeting, also on union stationery, relate that Howard had been brought before the JAC and reprimanded "for his behavior on the job as well as in school". It was also noted, "Kevin Howard was given a last warning. If he appears before this committee again, his apprenticeship will be terminated."

In December 1974 Howard pled guilty in court to a charge of possession of marijuana, and was sentenced to one year's imprisonment with five months suspended. On February 4, 1975, Mr. William Littlefield, the state and federal coordinator for apprenticeship training, wrote the Business Manager of Local 131 that four of its apprentices, including Howard, had missed a number of classes. He said he understood "that after three absences without good reason an apprentice is dropped from the school", and requested the Local to look into the matter and reply at its earliest convenience. The next significant event appears in the minutes of the meeting of the JAC on March 5, 1975:

"At this meeting we discussed Kevin Howard. After a lengthy discussion it was a unanimous decision to cancel Kevin's apprenticeship. Kevin is presently serving a 7 month term in Strafford County Jail on a drug charge. We felt that Kevin is a burden to this Committee and a detriment to the people around him.

"Before I send Kevin a registered letter, cancelling his agreement, I will discuss it with Mr. Littlefield."

The following day, Howard appeared at the union office, while on a work release program, and for the last time paid his dues, through March. He testified that he was told at that time by the Business Manager that "they had a meeting about me, and he didn't specifically say if it was the Joint Apprenticeship or Executive Branch that had a meeting, and he said the results of the meeting were that they decided to keep me on as a member." On March 20, 1975, Lavoie wrote Howard the following registered letter on union stationery:

"At a recent meeting held by the Joint Apprenticeship Committee, it was a unanimous decision to terminate your apprenticeship.

"You now have two drug violations charges against you, and this alone was enough to convince this Committee that your irresponsibility and poor behavior warrants your termination.

"Your conduct in the past few years on the job has not been up to par, resulting in the fact that many contractors in the area are unwilling to hire you.

"All of this was brought to your attention and discussed with you at two previous meetings.

"Your recent involvement in another drug violation, leaves the Committee no alternative. The safety and well being of fellow workers is of prime concern."

The letter was signed "William G. Lavoie/Secretary—Joint Apprentice Comm."

On April 18, 1975 Howard's attorney wrote to Lavoie addressing him as "Secretary Joint Apprentice Committee, Local 131, 1671 Brown Avenue, Manchester, N.H." He said that he was entering an objection "to the action taken by your Committee in terminating Mr. Howard's apprenticeship" and requested "a copy of your Union rules and regulations which govern this matter" and a fair hearing "in which Howard has an opportunity to present his side of the story." Not hearing from Lavoie, the attorney reiterated the requests in a second letter sent on May 21 in which he referred to "your union's determination to terminate Mr. Howard's apprenticeship." Again there was no response. Howard testified that a month later he met Lavoie on a job site and "discussed the situation about what has happened to me, about being kicked out, terminated from the apprenticeship, and we also discussed some of the procedures . . . so I could get the plumber's license rolling for myself on my own."

The present action against the Local[3] was filed in July 1975. It was alleged, inter alia, "[t]hat on or about March 20, 1975, the Plaintiff was notified by mail by the Defendant that his apprenticeship in the said union was terminated"; "[t]hat on April 18, 1975, and again on May 22, 1975, the Plaintiff, through his attorney, notified the Defendant that the matter of Plaintiff's expulsion from the union be reviewed by the Defendant at a full and fair hearing"; and "[t]hat the Defendant has never responded to the Plaintiff's request that he be afforded a full and fair hearing." The "said expulsion order" was alleged to be "unlawful". Local 131 answered "that on March 20, 1975, a letter was forwarded to the plaintiff advising as follows: 'At a recent meeting held by the Joint Apprenticeship Committee, it was a unanimous decision to terminate your apprenticeship' etc." and "that [defendant] received two communications from plaintiff's attorneys, one dated April 14, 1975 and another dated May 21, 1975 but leaves the contents of said communications to the evidence."

The Local filed a separate motion to dismiss or for summary judgment a year later, in June, 1976. For the first time it asserted that "Howard's membership in Local Union No. 131 was not suspended or terminated for any reason other than his failure to pay union dues and his termination from membership in Local Union No. 131 did not occur until the latter part of September, 1975."[4] This was the view which the court adopted after a full evidentiary hearing. Since expulsion for nonpayment of dues does not require serving the member with written specific charges, giving him a reasonable time to prepare his defense, or affording him a full and fair hearing. 29 U.S.C. § 411(a)(5), the court concluded that the union had not infringed on any rights

**3.** The JAC was not named as a defendant, and it is doubtful whether it could have been in a suit brought under 29 U.S.C. § 412. *See* 29 U.S.C. § 402(i).

**4.** A pretrial order filed in August 1975, after a preliminary pretrial conference, did not mention this defense in the section listing defenses. The Local's answer avoided the issue, except it

did include a general prayer for dismissal under Fed.R.Civ.P. 12(b) "for the further reason that the defendant local Union is not a proper party to these proceedings." The pretrial proceeding like the answer, occurred before expiration of the six months grace period, during which Howard might still have achieved good standing by paying up his back dues.

secured to Howard under the Act by expelling him in the fall of 1975.

The court was clearly right that the JAC was not, legally, an agent or arm of the Local and that Howard's expulsion in March 1975, from the apprenticeship program supervised by the JAC did not amount to expulsion from Local 131. It is at least open to question if the automatic cancellation provision contained in section 162 of the union constitution covered Howard's situation, as the JAC is arguably different from the apprenticeship committee of the Local even though the Business Manager regarded it as such. In any event, there is no evidence that Local 131 ever decided that section 162 required Howard's immediate expulsion or that it, in fact, expelled Howard in March. To the contrary, union records show that he was expelled on September 30, 1975. Lavoie's letter refers to terminating "your apprenticeship"; nothing was said about terminating union membership.

It is uncontroverted, also, that Howard did not pay dues to the Local after March. By September 30 six months had elapsed and under section 176 of the constitution a member in arrears for a period of six months "shall stand expelled". Although Howard was never notified of his arrearage, this was not required under the constitution.

The question remains whether Local 131 may rely upon the dues nonpayment exception in section 101(a)(5) of the LMRDA where its member, Lavoie, contributed to Howard's mistaken belief that he was expelled from the Local in March 1975 by sending the apprenticeship termination letter on a union letterhead. The letter did not, it is true, state that Howard was expelled as an apprentice member of the union; but as it appeared to come from the union, it was easily capable of that interpretation. In addition, the union did nothing to disabuse Howard and his attorney of their mistake after it became manifest in letters to the union and in the complaint that Howard filed well prior to the end of the six months.

The LMRDA is remedial legislation. The Act begins with Congress' finding that "it is essential that labor organizations . . . and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations" and its declaration that the legislation "is necessary to eliminate or prevent improper practices on the part of labor organizations". 29 U.S.C. §§ 401(a), (c); see Hall v. Cole, 412 U.S. 1, 7–8, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). As protection against abuses and overreaching by union leadership, Title I of the Act gives members certain rights, among them the right not to be disciplined without due process. See Smith v. Local 25, Sheet Metal Workers International Association, 500 F.2d 741, 750 (5th Cir. 1974). Nonpayment of dues is the only ground for union discipline which is exempt from the notice and hearing requirement. Congress doubtless felt that payment of dues presented a simple fact question which could be determined without a hearing. A union is entitled to insist upon the payment of dues, and we agree wholeheartedly with the courts which have said that the LMRDA is not a license for judicial interference in the internal affairs of a union. See, e. g., id.; Williams v. International Typographical Union, 423 F.2d 1295 (10th Cir.), cert. denied, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970); Gurton v. Arons, 339 F.2d 371 (2d Cir. 1964). Had Lavoie advised Howard of the termination of his apprenticeship on JAC or plain letterhead, it would have been Howard's duty, at his own risk, to ascertain the legal status of the JAC and the effect of the termination on his position in Local 131. Cf. Schuchardt v. Millwrights & Machinery Erectors Local 2834, 380 F.2d 795 (10th Cir. 1967).

But given the remedial purposes of the Act, Congress would hardly have expected that the dues nonpayment exception would be manipulated as a trap for an unwary member. Here, against the background of a confusing relationship between the JAC and the Local, we have an expulsion letter which, because written on union

letterhead, seems to hold out that the JAC is a committee of the union itself and that Howard's expulsion was a union matter. From the letter's format, Howard's lawyer surmised, not unreasonably, that Howard had, in effect, been expelled by the union; he even brought a lawsuit bottomed on this premise after his two letters brought no response. One would have thought that any one of these actions would have led someone to reply "Hold on. We never expelled you; your quarrel is with the JAC." Even the August preliminary pretrial conference failed to produce a hint that this was the Local's position. During all of that period, had Howard or his attorney been advised of their mistake, Howard could have paid his dues and regained good standing. It is hard not to believe that there was a calculated strategy to play dog in the manger until September 30 came and went. To permit the union to assert nonpayment on these facts would be to allow it to circumvent the underlying purpose of the LMRDA, to require fair and open dealings between a union and all its members. Where a member is so misled into believing that the union no longer regards him as a dues paying member, and hence will not accept dues, the Local is equitably barred from pleading the nonpayment of dues exception as a defense.

As the defense of nonpayment is not available to the union, the judgment below must be reversed, and Howard's reinstatement as a member of Local 131 ordered. This is not to say, however, that Local 131 is not entitled, after compliance with all the procedural requirements of section 101(a)(5), still to expel Howard should it determine that termination of his apprenticeship, or the reasons for the termination, afford cause for expulsion under its own constitution. If the Local does not now expel Howard, he will, of course, as a condition to his ordered reinstatement, have the obligation to pay his back dues in full to the date of reinstatement, subject to any damages he may recover. On the other hand, if the union should properly expel Howard, for cause and after a hearing, the expulsion will, under these circumstances, have a ret-roactive effect to March 1975, and Howard will have no obligation to pay dues. On Howard's claim for damages, the district court may wish to await the outcome of any union procedures concerning Howard's membership status before determining whether any damages are due. Howard's discharge by the JAC from the apprenticeship program may have made his continued claim to union membership essentially frivolous; on the other hand, the union's breach of its own duties may possibly be shown to have resulted in some real damage; as the issue has not been presented to us, we do not attempt to prejudge but leave it to the district court.

*Reversed and remanded for proceedings in accordance herewith. Costs for appellant.*