**Forrest G. ENGLISH And Robert M. Owens, Plaintiffs–Appellants,**

v.

**William J. COWELL, Donald Siddens, Charles J. Connor, et al., Defendants–Appellees.**

**No. 91–1079.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1991.

Decided July 29, 1992.

Paul A. Levy (argued), Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., for plaintiffs-appellants.

Michael W. O'Hara (argued), Cavanagh & O'Hara, Springfield, Ill., for defendants-appellees.

Before CUMMINGS and RIPPLE, Circuit Judges, and WILL, Senior District Judge.[*]

RIPPLE, Circuit Judge.

Forrest G. English and Robert M. Owens[1] appeal from an order dismissing their claim that Mr. English was discharged from his union without proper procedural protections, in violation of section 101(a)(5) of the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(5). They contend, first, that the district court erred in concluding that, as a matter of law, Mr. English's 1983 "termination" from the union comported with the procedural requirements of section 101(a)(5). They also contend that the district court erred in dismissing their claim, on an alternative ground, for failing to pay several sanctions assessed against them. For the following reasons, we reverse in part and vacate in part the decision of the district court, and remand for further proceedings consistent with this opinion.

## I

## BACKGROUND

A. *Facts*

Forrest English was a member of Local 46 of the International Association of Bridge, Structural and Ornamental Iron Workers ("Local 46" or "the local union") located in Springfield, Illinois. In 1983, Mr. English was in prison in Illinois, after having been convicted of a felony.

English's conviction and incarceration jeopardized his membership in the local union. Article XIX, section 10(2), of the Iron Workers' constitution states that charges may be brought against a union member who violates any of the union constitution's provisions. Article XXVI, section 14, paragraph 6a, directs that a member who is found guilty of the charges preferred against him may be disciplined, or expelled. Mr. English's conviction suggests that he may have violated at least two distinct provisions of the union constitution. First, Article II, section 2 states that a union member must be "of good moral character and competent to demand standard wages." Also, Article XIX, section 14, requires all union members who are not working, seeking work, or on layoff status, to take out a "withdrawal card," or be expelled. This provision may be enforced or waived by the union's General Secretary.

On December 27, 1983, Local 46's president, defendant William Cowell, and its business agent, defendant Donald Siddens, sent Mr. English, then in prison, a brief letter informing him that his membership was "terminated."[2] This letter did not state the precise basis for the action against Mr. English, nor did it offer him a hearing in which he could contest this decision. Article XXVI, section 14 of the Iron

---

[*] The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

[1]. The district court dismissed Mr. Owens from the case, determining that he received no injury from the action against Mr. English, and thus had no standing. R.234; *see also English v. Siddens*, 751 F.Supp. 1343, 1347–48 (C.D.Ill. 1990). Mr. Owens does not appeal this action. However, Mr. Owens' name appears on the notice of appeal and is referred to in the briefs.

[2]. The text of the letter is as follows:

> December 27, 1983
> Mr. Forrest English
> Box 1000–NO7632
> Lincoln, Illinois 62656

> Dear Sir:
> We have noted the fact that you are convicted of a felony and are serving a long term in prison.
> In view of this, your membership in the local union has been terminated effective immediately. You already have a copy of the Constitution and By–Laws of the International Union and the Local Union.
> Please do not send any further dues or money of any nature or kind whatsoever to the local union. Any further attempts to send dues to the local union will be returned to you.
> > Fraternally yours,
> > /s/
> > William J. Cowell, President
> > /s/
> > Donald Siddens, FS–T–BA

Workers' constitution sets forth an elaborate procedure to be followed when a local union seeks to discipline a member. Under this provision, the accused has a right to receive a detailed statement of the charges against him. The accused then may elect to be tried on the charges by a jury of members of the local union or by the executive committee. The accused also has a right to representation by another member during any proceeding, and an adverse decision from a trial may be appealed to the General Executive Board.

## B. *District Court Proceedings*

In 1984, Mr. English and Mr. Owens, another member of Local 46, filed suit pro se in the United States District Court for the Central District of Illinois against the local union's leadership and certain unknown persons, alleging that Mr. English's termination was in violation of the procedural rights guaranteed by section 101(a)(5) of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(5).[3] This section 101(a)(5) claim was docketed in the district court as Case No. 84–3299. In 1985, the court ordered that that case be consolidated with four other suits that Mr. English, sometimes with the assistance of Mr. Owens, had brought against the union

and its officers, Nos. 78–3116, 79–3022, 79–3036, and 84–3271. *English v. Cowell,* 117 F.R.D. 128, 129 (C.D.Ill.1987); *English v. Siddens,* 751 F.Supp. 1343, 1344 (C.D.Ill. 1990). These other suits were terminated by the district court on a variety of grounds and are not at issue here. The tortuous history of this litigation is set forth in the margin.[4]

In Case No. 84–3299, the section 101(a)(5) claim, the district court granted summary judgment to the defendants. It determined that the termination of Mr. English's union membership did not violate his procedural rights under the statute. The court first held that the termination was not "discipline" that triggered the protections of section 101(a)(5). Instead, the court found that Mr. English had been reclassified as a person not eligible for union membership because he was a felon in prison and therefore presumably did not meet the constitution's requirement that a union member be of good character and competent to demand union wages. *Id.* at 1348. In support of its holding, the district court cited the First Circuit's holding in *Macaulay v. Boston Typographical Union No. 13,* 692 F.2d 201, 204–05 (1st Cir.1982), that a union's reclassification of a member as "not at the trade" did not implicate section

Short App. at 19.

**3.** Section 101(a)(5) of the LMRDA is codified at 29 U.S.C. § 411(a)(5). For the sake of clarity, we shall omit this section's parallel citation in the United States Code.

**4.** Case No. 79–3036 was subsequently dismissed. *English v. Cowell,* 117 F.R.D. at 129. In 1987, Case No. 78–3116, which sought access to the local union's books and records under section 201(c) of the LMRDA, 29 U.S.C. § 431(c), was dismissed by the court as moot and, alternatively, as a sanction for abusive litigation tactics. R.193; *English v. Cowell,* 117 F.R.D. at 130–31. The court also dismissed on statute of limitations grounds the three other LMRDA cases pending against the union: Case No. 79–3022, which alleged violations of section 101(a)(1)'s guarantee of equal rights, 29 U.S.C. § 411(a)(1), section 101(a)(2)'s guarantee of free speech, 29 U.S.C. § 411(a)(2), and section 101(a)(3)'s mandatory procedures for implementing dues increases, 29 U.S.C. § 411(a)(3); Case No. 84–3271, which alleged further violations of section 101(a)(3); and Case No. 84–3299, which brought the section 101(a)(5) procedural claim. *English*

*v. Cowell,* 117 F.R.D. 137, 138–39 (C.D.Ill.1987); *English v. Siddens,* 751 F.Supp. at 1345.

The Supreme Court's decision in *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), which addressed the statutes of limitations governing section 101 claims, required reconsideration of the dismissals in Nos. 79–3022, 84–3271, and 84–3299. On remand, the defendants filed a motion to dismiss and also a summary judgment motion on all outstanding claims. R.221. In an opinion and order, the court first held that the two-year statute of limitations that Illinois imposes on personal injury actions governed these cases. *English v. Siddens,* 751 F.Supp. at 1346. The court then dismissed Nos. 79–3022 and 84–3271, finding, first, that the claims alleging a violation of free speech and equal rights were barred by the statute of limitations. *Id.* In addition, the court determined that claims challenging several of the dues increases were time-barred. *Id.* at 1346–47. For the several dues increase claims that were not barred by the statute of limitations, the court concluded that the increases did not violate section 101(a)(3), and therefore granted summary judgment to the defendants on those claims. *Id.* at 1347.

101(a)(5), even though it adversely affected the member's ability to obtain work. In addition, the court held that even if Mr. English's termination was "discipline," the defendants still were entitled to summary judgment under section 101(a)(5) because they needed only to point to "some evidence" to support the disciplinary decision, which the conviction provided. *English v. Siddens*, 751 F.Supp. at 1348 (citing *Gustafson v. American Train Dispatchers' Ass'n*, 788 F.2d 1284, 1287 (7th Cir.1986)).

As an alternative ground to support its disposition, the district court noted that, during the course of their litigation, Mr. English and Mr. Owens had been sanctioned for misconduct several times. The court further noted that they had not paid any of the attorneys' fees or costs that the court had imposed as sanctions, that they had failed to reply satisfactorily to the court's order to show cause why the case should not be dismissed for failure to pay sanctions, and that they continued to file frivolous motions. Because of these facts, the court concluded that it was appropriate to dismiss these cases for failure to comply

with its orders. *English v. Siddens*, 751 F.Supp. at 1349.

## II

## ANALYSIS

On appeal, Mr. English and Mr. Owens challenge only the court's dismissal of their claim that Mr. English was expelled without the procedural protections mandated by section 101(a)(5) of the LMRDA.[5] As we have just noted, the district court relied on alternate grounds to justify its dismissal of this claim. Consequently, to prevail in this appeal, the plaintiffs must establish that the district court committed two errors. First, they must show that the court mistakenly concluded that, as a matter of law, Mr. English's termination from the local union comported with the standards of section 101(a)(5). In addition, they must show that the district court abused its discretion when it dismissed their claims based on their failure to comply with the court's sanctions orders. We shall deal with each of these issues separately.[6]

---

5. Appellants' Br. at 3 n. 1.

6. In their brief, the defendants offer three additional arguments for why the district court's dismissal of the section 101(a)(5) claim should be upheld. First, they contend that Mr. English is not a proper party to this suit because there is some question whether his correct name is Forrest English, rather than Guy Levine, his apparently former name. Appellees' Br. at 3–5. Second, they contend that the claim should be dismissed because of Mr. English and Mr. Owens' failure to serve the Iron Workers international union with process. *Id.* at 27–29. Finally, they claim that there is no jurisdiction over this claim because the complaint alleges a conspiracy among the defendants to violate Mr. English and Mr. Owens' rights. *Id.* at 25–27.

These contentions do not merit extended discussion. First, with regard to the claim that Mr. English's alleged pseudonym makes him an improper party to this suit, we note that the record is unclear on what Mr. English's name actually is. Indeed, his deposition testimony suggests that he has legally changed his name from Guy Levine to Forrest English. Supp.App. at 4. In addition, the defendants do not claim that they have been confused or otherwise prejudiced by Mr. English's decision to sue as Forrest English, rather than Guy Levine. We accordingly decline to dismiss this case based on that argument. *See* Fed.R.Civ.P. 10(a). This matter is

left to the district court's sound discretion. *See Doe v. Stegall*, 653 F.2d 180, 184 (5th Cir.1981).

Second, we disagree that this case should be dismissed for plaintiffs' failure to serve the Iron Workers' international. Except for averring that the international is a "necessary" and "indispensable" party, the defendants offer no explanation for why failure to serve, within the facts of this case, requires dismissal. *See* Fed. R.Civ.P. 19; *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445 (7th Cir.1990). Absent a more detailed justification for this assertion, we shall not dismiss this suit for failure to serve. *See* Fed. R.App.P. 28(a)(5) (prior to December 1, 1991, this text appeared at Fed.R.App.P. 28(a)(4)); *Beard v. Whitley County REMC*, 840 F.2d 405, 408 (7th Cir.1988).

Finally, we do not agree that the complaint's allegation of a conspiracy to violate Mr. English's section 101(a)(5) rights, R.44 at 29 ¶ 4, divested the federal courts of jurisdiction over this claim. Although this matter was raised before the district court, that court did not ground its decision on this point. Cases from other circuits have held that no federal jurisdiction exists over claims alleging a conspiracy to violate rights under the LMRDA. *See Building Material & Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500, 512 (9th Cir.1989); *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1253–54 (2d Cir.1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). However,

## A. *The Section 101(a)(5) Issue*

### 1.

Section 101(a)(5) of the LMRDA provides that:

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

This provision is part of the "Bill of Rights" provided to union members by Title I of the LMRDA. *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers v. Crowley*, 467 U.S. 526, 536, 104 S.Ct. 2557, 2563, 81 L.Ed.2d 457 (1984). As Judge Wood, writing for this court, has noted, section 101(a)(5)'s purpose is to protect union members from improper discipline by ensuring that the standards of due process apply to union disciplinary proceedings. *Curtis v. International Alliance of Theatrical Stage Employees*, 687 F.2d 1024, 1028 (7th Cir.1982); *see NLRB v. Allis–Chalmers Mfg. Co.*, 388 U.S. 175, 194, 87 S.Ct. 2001, 2014, 18 L.Ed.2d 1123 (1967). Indeed, by its plain terms, the statute entitles a union member to notice of charges, time to prepare a defense, and a full and fair hearing whenever he is fined, suspended, expelled or otherwise disciplined. *Local No. 48, United Bhd. of Carpenters v. United Bhd. of Carpenters*, 920 F.2d 1047, 1056 (1st Cir.1990); *Chapa v. Local 18*, 737 F.2d 929, 933 (11th Cir.1984).[7]

These cases establish, then, that, once a member is subject to discipline, section 101(a)(5) requires that he receive written charges that are specific enough to inform him of the offense he allegedly committed.

Mr. English and Mr. Owens are pro se litigants, and we are required to read their complaint liberally. *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988). We believe that their complaint, when viewed in its totality, fairly alleges that the defendants actually violated their rights under the LMRDA, not simply that they entered into a conspiracy to violate these rights. The federal courts have the competence to hear these claims under section 102 of the LMRDA,

*International Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 245, 91 S.Ct. 609, 616, 28 L.Ed.2d 10 (1971); *Frye v. United Steelworkers*, 767 F.2d 1216, 1222 (7th Cir.), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461 (1985); *Curtis*, 687 F.2d at 1027. In addition, the member must have available a "full and fair" disciplinary hearing in which he can contest the charges. *Hardeman*, 401 U.S. at 245–46, 91 S.Ct. at 617; *see also Myers v. Affiliated Property Craftsmen Local No. 40*, 667 F.2d 817, 820 (9th Cir.1982); *Ritz v. O'Donnell*, 566 F.2d 731, 735 (D.C.Cir. 1977). While this hearing need not contain "the full panoply of procedural safeguards found in criminal proceedings, the fundamental and traditional concepts of due process do apply." *Tincher. v. Piasecki*, 520 F.2d 851, 854 (7th Cir.1975); *see also Frye*, 767 F.2d at 1223; *Curtis*, 687 F.2d at 1030. An essential element of this hearing must be "an impartial tribunal which arrives at its decision on the basis of evidence which the accused has an opportunity to confront and rebut." *Tincher*, 520 F.2d at 854; *see also Feltington v. Moving Picture Mach. Operators Union Local 306*, 605 F.2d 1251, 1257 (2d Cir.1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980). The Supreme Court also has held that section 101(a)(5)'s guarantee of a full and fair hearing requires the charging party to present "some evidence" at the hearing to support the charges made. *Hardeman*, 401 U.S. at 245–46, 91 S.Ct. at 617; *see also Gustafson*, 788 F.2d at 1287.

### 2.

■ The district court offered two alternative reasons why Mr. English's termination from the local union did not violate section 101(a)(5). First, it determined that

29 U.S.C. § 412. *International Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 241, 91 S.Ct. 609, 615, 28 L.Ed.2d 10 (1971).

7. *See generally* Sonja A. Soehnel & Janice M. Graham, Annotation, *Procedural Rights of Union Members, Under § 101(a)(5) of Labor–Management Reporting and Disclosure Act (29 USCS § 411(a)(5)),. During Union Disciplinary Proceedings—Federal Cases*, 102 A.L.R.Fed. 333, 341 (1991).

his termination was not "discipline" that would trigger the statute's protections. *English,* 751 F.Supp. at 1348. Second, the court determined that, even if Mr. English had been disciplined, the defendants complied with section 101(a)(5) because Mr. English's conviction following a criminal trial provided some evidence to support this action. *Id.* On the first point, we find ourselves in respectful disagreement with the district court. On the second, we agree that the criminal conviction was relevant to the union's determination but we cannot say that its mere existence precluded the necessity of complying with the strictures of section 101(a)(5). We shall address each of these issues in turn.

First, Mr. English's termination was an act of discipline that entitles him to the protections of section 101(a)(5). Although the December 27, 1983, termination letter does not use the word "expel," its practical effect is to expel Mr. English from the local union on the ground that he was a felon.[8] Because the local union's action was an expulsion, the plain language of section 101(a)(5) requires that Mr. English receive its procedural protection before such action could be taken. *See* 29 U.S.C. § 411(a)(5) ("No member of any labor organization may be ... expelled" without the enumerated procedural safeguards.); *see also Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 91–92, 110 S.Ct. 424, 439, 107 L.Ed.2d 388 (1989). Moreover, even if the termination of Mr. English's membership was not technically an "expulsion" under section

101(a)(5), it was an action " 'undertaken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership.' " *Breininger,* 493 U.S. at 91, 110 S.Ct. at 439 (quoting *Miller v. Holden,* 535 F.2d 912, 915 (5th Cir.1976)). Therefore, Mr. English was "otherwise disciplined"[9] within the meaning of section 101(a)(5), and is entitled to the procedural protection of the statute.

We cannot accept the district court's conclusion that Mr. English's termination was an "objective reclassification" of his union status that did not implicate section 101(a)(5). In adopting this characterization, the district court relied upon the First Circuit's decision in *Macaulay v. Boston Typographical Union No. 13,* 692 F.2d 201, 204–05 (1st Cir.1982), which held that a union's decision to reclassify a member as "not at the trade," and to remove him from a hiring priority list, was not "discipline" for the purposes of section 101(a)(5). However, that case is not controlling here. The interests that are at stake in Mr. English's case are markedly different from those in *Macaulay.* The *Macaulay* plaintiff's reclassification as "not at the trade" only affected his position on a hiring list; it did not jeopardize his membership in the union or his other rights as a union member. *See Macaulay,* 692 F.2d at 203. It was the "even-handed application of a reasonable union rule," *id.* at 204, that did not "directly penalize[ ] or single[ ] out from other comparable members," *id.,* the member in a way "similar to the other specific acts

8. We note that at one point in its opinion granting summary judgment on the section 101(a)(5) claim, the district court described Mr. English's membership termination as an "expulsion." *English v. Siddens,* 751 F.Supp. at 1347 n. 7; *see also Adams–Lundy v. Association of Prof. Flight Attendants,* 731 F.2d 1154, 1157 (5th Cir.1984) (section 101(a)(5) protects the "rights of membership *per se*" ); *Lewis v. American Fed'n of State, County and Municipal Employees,* 407 F.2d 1185, 1188 (3d Cir.) ("loss of membership clearly came within the purview of [§ 101(a)(5)] of the LMRDA"), *cert. denied,* 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969).

9. The Supreme Court has held that, for the purposes of section 101(a)(5), the phrase "otherwise discipline" denotes "only punishment au-

thorized by the union as a collective entity to enforce its rules," and that a union member is "disciplined" only when a union acts " 'under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership.' " *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 91, 110 S.Ct. 424, 439, 107 L.Ed.2d 388 (1989) (quoting *Miller v. Holden,* 535 F.2d 912, 915 (5th Cir.1976)). *See also Linnane v. General Elec. Co.,* 948 F.2d 69, 71 (1st Cir.1991); *Brenner v. Local 514, United Bhd. of Carpenters,* 927 F.2d 1283, 1297 (3d Cir.1991); *Guidry v. International Union of Operating Eng'r, Local 406,* 907 F.2d 1491, 1492–93 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990).

included in the section, i.e., fining, suspending, and expelling," *id.* By contrast, the union's action here ended Mr. English's rights and privileges as a member of the local union. As our colleague in the district court noted,[10] the facts of this case strongly suggest that the local union expelled Mr. English. Such action implicates the plain language of section 101(a)(5).[11]

██ The district court alternatively concluded that, even if Mr. English's termination was discipline that entitled him to the protection of section 101(a)(5), the defendants complied with the statute because the felony conviction provided some evidence to support ending Mr. English's membership. As a threshold matter, we note that, while a federal court has the authority under 29 U.S.C. § 412 to determine if this "some evidence" standard has been satisfied, *Hardeman* makes clear that this "some evidence" review is to be made only after a disciplinary proceeding has been provided, and the union's decision has been made. *Hardeman*, 401 U.S. at 245–46, 91 S.Ct. at 617 (The guarantee of a "full and fair" disciplinary hearing "requires the charging party to provide some evidence at the disciplinary hearing to support the charges made."); *see also Mayle v. Laborer's Int'l Union of North America, Local 1015*, 866 F.2d 144, 147 (6th Cir.1988). However, the fact that the local union may be able to point to some evidence that would justify its sanction does not excuse its compliance with the mandatory procedural protections of section 101(a)(5). This process must be given regardless of whether the facts clearly show that the union

member deserves some discipline. *See Howard v. United Ass'n of Journeymen*, 560 F.2d 17, 21–22 (1st Cir.1977). Here, the local union has made no showing that a felony conviction *ipso facto* establishes a lack of "good moral character" within the meaning of Article II, section 2 of its constitution. Nor has it established that the union disciplinary board is without discretion to impose a sanction other than expulsion whenever a member is found guilty of a felony.[12] We emphasize that we express no opinion with respect to the union's ultimate decision in the case. In making its determination, the union has every right to consider Mr. English's felony conviction and to give it whatever weight it chooses. *See Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1238 (2d Cir.1979) (Section 101(a)(5) "does not restrict the form of discipline a union may impose; it guards against abusive and unjust exercise of union authority by prohibiting a union from disciplining a member without first affording him certain procedural safeguards against unwarranted or inaccurate adjudication."), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *Howard*, 560 F.2d at 22 (after complying with section 101(a)(5)'s procedural safeguards, a union may expel a member if it should determine that the member's conduct creates "cause for expulsion under its own constitution"). The LMRDA "is not a license for judicial interference in the internal affairs of a union." *Howard*, 560 F.2d at 21. We hold only that the local union in arriving at its decision

---

**10.** *See, supra,* note 8.

**11.** The district court noted that, in addition to the union constitution's requirement that a member be of "good moral character," it also requires that the member be "competent to demand standard wages." It is not at all clear, however, that this criterion is not met because of Mr. English's incarceration. The term appears to address the member's ability to perform at the skill level of union members.

**12.** This is not a case where, as a practical matter, there is no reason to hold a hearing because the fact that would have to be proven is admitted and the disposition is foreordained. *See, e.g., Driscoll v. International Union of Operating Eng'r, Local 139*, 484 F.2d 682, 689 (7th Cir.

1973) (union member who was disqualified from running for union office because of his refusal to sign an affidavit which was a prerequisite for candidacy was not entitled to a hearing "since, as a practical matter, no hearing was needed to determine that he did not sign the affidavit"), *cert. denied*, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974); *Hurwitz v. Directors Guild of America, Inc.*, 364 F.2d 67, 73 n. 8 (2d Cir.) (members expelled from union for failure to sign a mandatory oath were not entitled to a hearing because "no hearing is necessary to determine that plaintiffs did not sign the oath"), *cert. denied*, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966).

must comply with the requirements of section 101(a)(5).

### B. *The Sanctions Issue*

■ As noted above, in 1985, this section 101(a)(5) claim was consolidated with four other law suits that Mr. English and Mr. Owens had pending against the local union and its leadership. During the course of the litigation of these consolidated suits, Mr. English and Mr. Owens were sanctioned several times for misconduct. On October 12, 1990, the district court stated that it had learned that the plaintiffs had not paid four fines it had imposed: (1) a June 19, 1986, order dismissing defendants James Riemer, Arnold Zilinski, and Steve Pasley from suit and taxing the plaintiffs for the costs and fees of defending the suit; (2) a July 11, 1986, order denying plaintiffs' "Motion that Judgment Be Altered" that sought to undo the dismissal of June 19, 1986, and awarding costs and fees to the dismissed defendants; (3) a February 20, 1987, order dismissing John Hetz from suit and taxing plaintiffs for costs and fees of defending the suit; and (4) a September 18, 1987, order granting defendants' motion for sanctions and ordering plaintiffs to pay $4,774.00 as reasonable attorneys' fees and accountant's fees. R.228. After learning of plaintiffs' failure to pay, the court, apparently sua sponte, issued an order to show cause why the action should not be dismissed for failure to comply with the sanctions orders. R.228.

In response to the order to show cause, Mr. English and Mr. Owens claimed inability to pay arising from their "insecure financial conditions," their limited incomes, ill health, and their inability to work. As an alternative ground for why the cases should not be dismissed, Mr. English and Mr. Owens argued that the district court erroneously granted the defendants' motions to dismiss, and that the court had been misled by falsehoods that the defendants allegedly had made in their affidavits. R.230.

The district court did not accept the plaintiffs' explanations, and dismissed their claims for failure to comply with the sanctions orders. *English v. Siddens*, 751 F.Supp. at 1349. In an opinion accompanying the decision, the court stated that the sanctions had failed in their purposes of deterring frivolous pleading and preventing harassment of innocent parties when, in this case, "the [p]laintiffs can disregard them with impunity." *Id.* In addition, the court found that the plaintiffs continued to file frivolous motions in the lawsuits. As a result "[t]he failure of the [p]laintiffs to comply with this Court's previous orders regarding sanctions and the continued filing by [p]laintiffs of frivolous motions lead this Court to the conclusion that it is appropriate to dismiss these cases for [p]laintiffs' failure to comply with this Court's orders." *Id.*

Mr. English and Mr. Owens challenge the district court's decision to dismiss these claims for failure to pay sanctions. In dismissing these claims, the court did not cite any statute or rule authorizing such action, but, instead, apparently relied upon its inherent power " 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Schilling v. Walworth County Park & Planning Comm'n*, 805 F.2d 272, 274–75 (7th Cir.1986) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).[13] We review this decision only to determine whether the district court abused its discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam); *Link*, 370 U.S. at 633, 82 S.Ct. at 1390; *3 Penny Theater Corp. v. Plitt Theatres, Inc.*, 812 F.2d 337, 338–39 (7th Cir.1987); *Schilling*, 805 F.2d at 274–75. Of course, as we have emphasized in earlier cases, deferential review does not mean the absence of meaningful review. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 936 (7th Cir.1989) (en banc) ("Review under the abuse of discretion standard does

---

**13.** *Cf.* Fed.R.Civ.P. 41(b) ("For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.").

not mean no appellate review.") (quoting *In re Ronco, Inc.*, 838 F.2d 212, 217–18 (7th Cir.1988)). It is well-established that, when reviewing the dismissal of a claim or action, we must consider the case's procedural history, as well as its status at the time of dismissal. *Lockhart v. Sullivan*, 925 F.2d 214, 217–18 (7th Cir.1991); *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1177 (7th Cir.1987). The sanction of dismissal is appropriate only in extreme situations " 'when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing.' " *Schilling*, 805 F.2d at 275 (quoting *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir.1983)); *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir.1992); *Del Carmen v. Emerson Elec. Co.*, 908 F.2d 158, 162–63 (7th Cir. 1990). Absent such circumstances, "the careful exercise of judicial discretion requires that a district court consider less severe sanctions and explain, where not obvious, their inadequacy for promoting the interests of justice." *Schilling*, 805 F.2d at 275.

Mr. English and Mr. Owens appear to have been far from model litigants; we can understand the district court's displeasure with their conduct. However, on this record, we cannot sustain the district court's dismissal of these claims. It is important to note that the district court's decision to dismiss was bottomed on the failure of English and Owens to pay certain sanctions that had been assessed against them. *English v. Siddens*, 751 F.Supp. at 1349. However, in response to the order to show cause, both appellants claimed that they had not paid the sanctions because they were financially unable. R.230. If the plaintiffs were truly unable to pay the sanctions, they may have had a valid excuse for their noncompliance. *See Moon v. Newsome*, 863 F.2d 835, 838 (11th Cir.)

("Where monetary sanctions are imposed on [a] ... litigant and the litigant comes forward showing a true inability to pay, it might be an abuse of discretion for the court then to dismiss for failure to pay"), *cert. denied*, 493 U.S. 863, 110 S.Ct. 180, 107 L.Ed.2d 135 (1989); *Hornbuckle v. Arco Oil & Gas Co.*, 732 F.2d 1233, 1237 (5th Cir.1984) (finding of fact that party has the ability to pay a sanction is "essential" for review of whether dismissal for failure to pay was an abuse of discretion), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986).[14] The district court did not address Mr. English and Mr. Owens' claim that they were unable to pay the sanctions in its decision dismissing these cases. *English v. Siddens*, 751 F.Supp. at 1349. The record does not disclose whether it investigated their claim through a hearing or other factfinding procedure. Without a more developed record on whether Mr. English and Mr. Owens were unable to pay, we cannot determine conclusively whether the district court abused its discretion in dismissing these claims for failure to comply with the sanctions orders.

Even if the plaintiffs could not have satisfied the monetary sanctions, their conduct related to the imposition of these sanctions, such as ignoring the court's orders[15] or continuing to file frivolous motions despite previous warnings, well might justify dismissal. There are several significant barriers to our sustaining the district court's action on this basis. First, the record before us does not contain most of the district court's orders imposing sanctions. We therefore cannot tell whether the plaintiffs' delay in replying would justify the extraordinary sanction of dismissal. Furthermore, while the district court was of the view that several motions filed after the imposition of monetary sanctions were frivolous, *id.* at 1349 n. 11, it does not appear that it

---

14. *See also Diehl v. H.J. Heinz Co.*, 901 F.2d 73, 75 (7th Cir.1990) (court abused its discretion in dismissing a suit for failure to follow a discovery order when it was impossible to comply with the order).

15. *See Vakalis v. Shawmut Corp.*, 925 F.2d 34, 36 (1st Cir.1991) (even if party believed in good faith that it should not have been subjected to

sanctions, it was not entitled to disobey the court's order); *Moon v. Newsome*, 863 F.2d 835, 838 (11th Cir.) (party unable to pay sanction must demonstrate inability to pay or some other excuse for noncompliance, or face dismissal), *cert. denied*, 493 U.S. 863, 110 S.Ct. 180, 107 L.Ed.2d 135 (1989).

viewed these matters as a sufficient justification, considered apart from the nonpayment of the monetary sanctions, to justify dismissal.

Accordingly, we must vacate the district court's decision dismissing Mr. English and Mr. Owens' claims for failure to comply with the court's sanction orders. However, we emphasize the narrow basis of our holding here. We simply decide that, on the current record, we are unable to determine conclusively that the plaintiffs' failure to pay the sanctions assessed against them justified dismissal. We express no opinion on whether such a decision could be supported after further factfinding and development of the record. Moreover, we cannot address the question of whether the plaintiffs' overall conduct in these suits demonstrates such a degree of delay or contumacy that dismissal would be warranted apart from their failure to pay the sanctions. *See Anderson v. United Parcel Serv.,* 915 F.2d 313, 315 (7th Cir.1990).

### Conclusion

For the foregoing reasons we reverse the district court's decision granting summary judgment in favor of the defendants on the section 101(a)(5) claim, and vacate its decision dismissing all claims because of Mr. English and Mr. Owens' failure to pay the sanctions assessed against them. We remand this case for further proceedings consistent with this opinion. The appellants may recover costs in this court.

REVERSED IN PART, VACATED IN PART, AND REMANDED